1   STEVE W. BERMAN (*pro hac vice* to be filed)
    THOMAS E. LOESER (SBN 202724)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
3   Seattle, Washington  98101
    Telephone:  (206) 623-7292
4   Facsimile:   (206) 623-0594
    steve@hbsslaw.com
5

6   PETER B. FREDMAN
    LAW OFFICE OF PETER FREDMAN
7   125 University Avenue, Suite 102
    Berkeley, CA 94710
8   Telephone: (510) 868-2626
    Facsimile:  (510) 868-2627
9   peter@peterfredmanlaw.com

10  *Attorneys for Plaintiffs and the proposed class and*
    *subclasses*
11

12  *[Additional counsel listed on signature page.]*

13                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
14                     SAN FRANCISCO DIVISION

15  NICHOLAS BENIPAYO, MARK CARNETT,          Case No.
    DANIEL ROBINSON, JONATHON
16  HORACEK, STEFANIE BEAUDREAULT,            CLASS ACTION
    JAMES BABIAK, DAVID GOODSON,
17  EMILY FISHER, KSHANTI GREENE, JOHN        **CLASS ACTION COMPLAINT**
    HALLORAN, SCOTT MOEN, GRANT
18  GALL, ANTHONY DEMARTINO, PETAR
    RAMADANOVIC, CHRISTOPHER                  **JURY TRIAL DEMANDED**
19  MONROE, MELISSA BRACKEN, REZEDA
    DOZIER, JOHN DULL, MELISSA
20  FEDORCZYK, DAVID ANTELLOCY,
    JOSHUA CAMPBELL, VAN HAYNES and
21  ALFRED HOWE, on behalf of themselves and
    all others similarly situated,
22

23                                  Plaintiffs,

24           v.

25

26  VOLKSWAGEN GROUP OF AMERICA,
    INC., a New Jersey Corporation,
27

28                                  Defendant.

**TABLE OF CONTENTS**

<u>Page</u>

I.     FACTUAL ALLEGATIONS ................................................................................................ 1

II.    JURISDICTION ............................................................................................................... 5

III.   VENUE ............................................................................................................................ 5

IV.    PARTIES .......................................................................................................................... 5

       A.     Virginia Plaintiffs .................................................................................................. 5

              1.     Nicholas Benipayo ..................................................................................... 5

       B.     Arizona Plaintiffs ................................................................................................... 6

              1.     Mark Carnett .............................................................................................. 6

       C.     California Plaintiffs ................................................................................................ 6

              1.     Daniel Robinson ......................................................................................... 6

       D.     Colorado Plaintiffs ................................................................................................. 7

              1.     Jonathon Horacek ....................................................................................... 7

       E.     Connecticut Plaintiffs ............................................................................................ 7

              1.     Stefanie Beaudreault .................................................................................. 7

       F.     Florida Plaintiffs .................................................................................................... 8

              1.     James Babiak .............................................................................................. 8

       G.     Georgia Plaintiffs ................................................................................................... 8

              1.     Van Haynes ................................................................................................ 8

       H.     Illinois Plaintiffs .................................................................................................... 9

              1.     David Goodson ........................................................................................... 9

       I.     Kentucky Plaintiffs ................................................................................................ 9

              1.     Emily Fisher ............................................................................................... 9

       J.     Maine Plaintiffs .................................................................................................... 10

              1.     Kshanti Greene ......................................................................................... 10

       K.     Massachusetts Plaintiffs ...................................................................................... 10

              1.     John Halloran ............................................................................................ 10

L.    Minnesota Plaintiffs ...................................................................... 11
      1.    Scott Moen ......................................................................... 11
M.    Missouri Plaintiffs ........................................................................ 11
      1.    Grant Gall .......................................................................... 11
N.    Nevada Plaintiffs .......................................................................... 12
      1.    Anthony DeMartino ......................................................... 12
O.    New Hampshire Plaintiffs ............................................................ 12
      1.    Petar Ramadanovic .......................................................... 12
P.    New York Plaintiffs ...................................................................... 13
      1.    Christopher Monroe ......................................................... 13
Q.    North Carolina Plaintiffs ............................................................. 13
      1.    Melissa Bracken ............................................................... 13
R.    Ohio Plaintiffs .............................................................................. 14
      1.    Rezeda Dozier ................................................................... 14
S.    Oregon Plaintiffs .......................................................................... 14
      1.    Jon Dull ............................................................................. 14
T.    Pennsylvania Plaintiffs ................................................................. 15
      1.    Melissa Fedorczyk ........................................................... 15
U.    Texas Plaintiffs ............................................................................. 15
      1.    David Antellocy ................................................................ 15
V.    Washington Plaintiffs ................................................................... 16
      1.    Joshua Campbell ............................................................... 16
W.    Wisconsin Plaintiffs ...................................................................... 16
      1.    Alfred Howe ...................................................................... 16
X.    Defendant ...................................................................................... 17
V.    TOLLING OF THE STATUTE OF LIMITATIONS .................................. 18
A.    Discovery Rule Tolling ................................................................. 18
B.    Fraudulent Concealment Tolling .................................................. 19

C.    Estoppel ..................................................................................................19

VI.    CLASS ALLEGATIONS ..................................................................................20

VII.    VIOLATIONS ALLEGED ................................................................................26

A.    Claims Brought on Behalf of the Nationwide Class and the Virginia
Subclass Under Virginia Law.................................................................26

COUNT I  FRAUD BY CONCEALMENT UNDER VIRGINIA LAW...........................................26

COUNT II VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA.
CODE ANN. §§ 59.1-196, *ET SEQ.*)....................................................................30

COUNT III  BREACH OF CONTRACT  (BASED ON VIRGINIA LAW)....................................31

B.    Claims Brought on Behalf of the Arizona Subclass...................................32

COUNT I  VIOLATIONS OF THE CONSUMER FRAUD ACT (ARIZ. REV. STAT.
§§ 44-1521, *ET SEQ.*) ....................................................................................32

COUNT II  BREACH OF CONTRACT  (BASED ON ARIZONA LAW) .....................................34

COUNT III  FRAUDULENT CONCEALMENT (BASED ON ARIZONA LAW)........................35

C.    Claims Brought on Behalf of the California Subclass.................................36

COUNT I  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS.
& PROF. CODE §§ 17200, *ET SEQ.*)...................................................................36

COUNT II  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
(CAL. BUS. & PROF. CODE §§ 1750, *ET SEQ.*)....................................................38

COUNT III  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS.
& PROF. CODE §§ 17500, *ET SEQ.*)...................................................................40

COUNT IV  BREACH OF CONTRACT  (BASED ON CALIFORNIA LAW) ..............................41

COUNT V  FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW) ..........................42

D.    Claims Brought on Behalf of the Colorado Subclass.................................46

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)..........................................................46

COUNT II  STRICT PRODUCT LIABILITY (BASED ON COLORADO LAW)..........................47

COUNT III  BREACH OF CONTRACT (BASED ON COLORADO LAW)................................48

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON COLORADO LAW) ....................49

E.    Claims Brought on Behalf of the Connecticut Subclass ............................51

COUNT I  VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT (CONN. GEN.
STAT. ANN. §§ 42-110A, *ET SEQ.*)....................................................................51

COUNT II  BREACH OF CONTRACT  (BASED ON CONNECTICUT LAW) .............................53

COUNT III  FRAUDULENT CONCEALMENT (BASED ON CONNECTICUT LAW)...............54

     F.     Claims Brought on Behalf of the Florida Subclass .......................................55

COUNT I  VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE
     PRACTICES ACT (FLA. STAT. §§ 501.201, *ET SEQ.*) ......................................55

COUNT II  BREACH OF CONTRACT  (BASED ON FLORIDA LAW).......................................56

COUNT III  FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ........................57

     G.     Claims Brought on Behalf of the Georgia Subclass ....................................59

COUNT I  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA.
     CODE ANN. § 10-1-390, *ET SEQ.*)....................................................................59

COUNT II  VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE
     PRACTICES ACT (GA. CODE ANN. § 10-1-370, *ET SEQ.*).................................59

COUNT III  FRAUD BY CONCEALMENT ............................................................................62

COUNT IV  BREACH OF CONTRACT  (BASED ON GEORGIA LAW)..................................66

     H.     Claims Brought on Behalf of the Illinois Subclass .....................................67

COUNT I  VIOLATION OF ILLINOIS CONSUMER FRAUD AND  DECEPTIVE
     BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.* AND 720 ILCS
     295/1A).................................................................................................................67

COUNT II  FRAUD BY CONCEALMENT ............................................................................71

COUNT III  BREACH OF CONTRACT  (BASED ON ILLINOIS LAW)...................................74

     I.     Claims Brought on Behalf of the Kentucky Subclass .................................75

COUNT I  VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT (KY.
     REV. STAT. § 367.110, *ET SEQ.*)......................................................................75

COUNT II  FRAUD BY CONCEALMENT ............................................................................79

COUNT III  BREACH OF CONTRACT  (BASED ON KENTUCKY LAW).................................82

     J.     Claims Brought on Behalf of the Maine Subclass........................................83

COUNT I  VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (ME. REV.
     STAT. ANN. TIT. 5 § 205-A, *ET SEQ.*)..............................................................83

COUNT II  FRAUD BY CONCEALMENT ............................................................................84

COUNT III  BREACH OF CONTRACT  (BASED ON MAINE LAW)........................................87

     K.     Claims Brought on Behalf of the Massachusetts Subclass...........................88

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION
ACT (MASS. GEN. LAWS CH. 93A)..............................................................88

COUNT II BREACH OF CONTRACT  (BASED ON MASSACHUSETTS LAW) .......................89

COUNT III FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS LAW)...........90

    L.     Claims Brought on Behalf of the Minnesota Subclass ..................................91

COUNT I  VIOLATION OF MINNESOTA PREVENTION  OF CONSUMER FRAUD
ACT   (MINN. STAT. § 325F.68, *ET SEQ.*).................................................91

COUNT II  VIOLATION OF MINNESOTA UNIFORM  DECEPTIVE TRADE
PRACTICES ACT  (MINN. STAT. § 325D.43-48, *ET SEQ.*) ...............................95

COUNT III  FRAUD BY CONCEALMENT .......................................................................98

COUNT IV BREACH OF CONTRACT  (BASED ON MINNESOTA LAW) ..............................102

    M.    Claims Brought on Behalf of the Missouri Subclass...................................103

COUNT I  VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT  (MO.
REV. STAT. § 407.010, *ET SEQ.*)...........................................................103

COUNT II  FRAUD BY CONCEALMENT .......................................................................107

COUNT III BREACH OF CONTRACT  (BASED ON MISSOURI LAW)..................................111

    N.     Claims Brought on Behalf of the Nevada Subclass....................................112

COUNT I  VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
(NEV. REV. STAT. § 598.0903, *ET SEQ.*) ..............................................112

COUNT II  FRAUD BY CONCEALMENT .......................................................................116

COUNT III BREACH OF CONTRACT  (BASED ON NEVADA LAW) ....................................119

    O.     Claims on Behalf of the New Hampshire Subclass....................................120

COUNT I  VIOLATION OF N.H. CONSUMER PROTECTION ACT  (N.H. REV. STAT.
ANN. § 358-A:1, *ET SEQ.*)....................................................................120

COUNT II  FRAUD BY CONCEALMENT .......................................................................124

COUNT III BREACH OF CONTRACT  (BASED ON NEW HAMPSHIRE LAW).....................128

    P.     Claims Brought on Behalf of the New York Subclass .................................129

COUNT I VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y.
GEN. BUS. LAW § 349)...........................................................................129

COUNT II VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y.
GEN. BUS. LAW § 350).........................................................................130

COUNT III BREACH OF CONTRACT (BASED ON NEW YORK LAW) ...............................131

COUNT IV FRAUDULENT CONCEALMENT (BASED ON NEW YORK LAW) .................... 132

      Q.     Claims Brought on Behalf of the North Carolina Subclass ....................................... 134

COUNT I VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE
      TRADE PRACTICES ACT (N.C. GEN. STAT. §§ 75-1.1, *ET SEQ.*) ................................ 134

COUNT II BREACH OF CONTRACT  (BASED ON NORTH CAROLINA LAW).................. 135

COUNT III FRAUDULENT CONCEALMENT (BASED ON NORTH CAROLINA
      LAW) ...................................................................................................................... 136

      R.     Claims Brought on Behalf of the Ohio Subclass ....................................................... 138

COUNT I VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV.
      CODE §§ 1345.01, *ET SEQ.*) ................................................................................... 138

COUNT II BREACH OF CONTRACT (BASED ON OHIO LAW) ............................................ 140

COUNT III FRAUDULENT CONCEALMENT (BASED ON OHIO LAW) ............................... 141

      S.     Claims Brought on Behalf of the Oregon Subclass .................................................. 143

COUNT I  VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
      (OR. REV. STAT. §§ 646.605, *ET SEQ.*) .................................................................. 143

COUNT II  FRAUD BY CONCEALMENT ............................................................................. 146

COUNT III BREACH OF CONTRACT  (BASED ON OREGON LAW) .................................... 150

      T.     Claims Brought on Behalf of the Pennsylvania Subclass ......................................... 151

COUNT I  VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
      AND CONSUMER PROTECTION LAW  (73 P.S. § 201-1, *ET SEQ.*)............................ 151

COUNT II  FRAUD BY CONCEALMENT ............................................................................. 155

COUNT III BREACH OF CONTRACT  (BASED ON PENNSYLVANIA LAW)....................... 158

      U.     Claims Brought on Behalf of the Texas Subclass ..................................................... 159

COUNT I VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS.
      & COM. CODE §§ 17.41, *ET SEQ.*)........................................................................... 159

COUNT II BREACH OF CONTRACT  (BASED ON TEXAS LAW) ......................................... 160

COUNT III FRAUD BY CONCEALMENT .............................................................................. 161

      V.     Claims Brought on Behalf of the Washington Subclass ........................................... 164

COUNT I  VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
      (WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*) .............................................. 164

COUNT II............................................................................................................................. 166

BREACH OF CONTRACT (BASED ON WASHINGTON LAW) ................................................ 166

COUNT III FRAUD BY CONCEALMENT ........................................................................ 167

      W.      Claims Brought on Behalf of the Wisconsin Subclass ................................................ 170

COUNT I VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES
      ACT (WIS. STAT. § 110.18) ........................................................................ 170

COUNT II FRAUD BY CONCEALMENT ........................................................................ 174

COUNT III BREACH OF CONTRACT (BASED ON WISCONSIN LAW)................................ 177

REQUEST FOR RELIEF........................................................................................ 178

DEMAND FOR JURY TRIAL ..................................................................................... 179

1   Plaintiffs [list all Plaintiffs] ("Plaintiffs"), individually and on behalf of all others similarly

2   situated (the "Class"), allege the following:

## I.      FACTUAL ALLEGATIONS

4       1.       The United States Government, through the Environmental Protection Agency, has

5   passed and enforced laws designed to protect United States citizens from pollution and in particular,

6   certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must

7   abide by these US laws and must adhere to EPA rules and regulations.  This case arises because

8   Nicholas Benipayo, Mark Carnett, Daniel Robinson, Jonathon Horacek, Stefanie Beaudreault,

9   James Babiak, David Goodson, Emily Fisher, Kshanti Greene, John Halloran, Scott Moen, Grant

10  Gall, Anthony DeMartino, Petar Ramadanovic, Christopher Monroe, Melissa Bracken, Rezeda

11  Dozier, Jon Dull, Melissa Fedorczyk, David Antellocy, Joshua Campbell, Alfred Howe

12  ("Plaintiffs") claim that Defendant Volkswagen Group of America ("Volkswagen") purposefully

13  and intentionally breached the laws of the United States and the rules and regulations of the EPA by

14  selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG

15  that purposefully evaded federal and state laws.  As stated by Cynthia Giles, Assistant

16  Administrator for the Office of Enforcement and Compliance Assurance at the EPA:  "Using a

17  defeat device in cars to evade clean air standards is illegal and a threat to public health."  Yet that is

18  exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.[1]

19      2.       As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the

20  Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects

21  when the vehicle is undergoing official emissions testing and turns full emissions controls on only

22  during the test.  But otherwise, that is at all other times that the vehicle is running, the emissions

23  controls are suppressed.  This results in cars that meet emissions standards in the laboratory or state

24  testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the

25  standard allowed under United States laws and regulations.  The software produced and used by

26  Volkswagen is a "defeat device" as defined by the Clean Air Act.

---

27  [1] *See* Sept. 18, 2015 EPA News Release.

28

CLASS ACTION COMPLAINT            - 1 -

3.      NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

4.      The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.  Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system during normal driving conditions, cannot be certified.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5.      According the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.  Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6.      Volkswagen expressly marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, and powerful.  For example, the following promotional material was used in 2010, and similar materials have been used across the spectrum of models using the CleanDiesel engine system:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19





20   7.   Volkswagen has charged a substantial premium for the Affected Vehicles, ironically

21   marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base

22   S model has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting

23   MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta

24   model is substantially higher.  The highest level gas Jetta SE has a starting MSRP of $20,095, while

25   the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

26   8.   These premiums occur across all of the vehicles in which Volkswagen installed its

27   "defeat device" for emissions testing.  The table below sets forth the price premium for each base,

28   mid-level and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

9.      Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

10.     On September 20, 2015, Volkswagen admitted that the EPA allegations were true.  It admitted using a "defect device" in the Affected Vehicles.  Its CEO Martin Winterkorn stated:  "I personally am deeply sorry that we have broken the trust of our customers and the public."

11.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members

will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, affected vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

12. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles. Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this Complaint.

## II. JURISDICTION

13. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III. VENUE

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Plaintiff Daniel Robinson resides in this District and purchased his Affected Vehicle in this District. Moreover, Volkswagen is headquartered in this District and has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV. PARTIES

A.   **Virginia Plaintiffs**

    **1.   Nicholas Benipayo**

15. Plaintiff Nicholas Benipayo is an individual residing in Chesapeake, Virginia. In 2010, Plaintiff Benipayo purchased a 2010 Jetta TDI CleanDiesel from Lindsay Volkswagen of Dulles, an authorized Volkswagen dealer in Sterling, Virginia. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully

used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**B. Arizona Plaintiffs**

**1. Mark Carnett**

16. Plaintiff Mark Carnett is an individual residing in Sierra Vista, Arizona. In 2010, Plaintiff purchased two 2010 Jetta TDI CleanDiesel cars from Chapman Volkswagen Tuscon, an authorized Volkswagen dealer in Tucson, Arizona. Plaintiff purchased, and still owns, these vehicles. Unknown to Plaintiff, at the time the vehicles were purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicles on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**C. California Plaintiffs**

**1. Daniel Robinson**

17. Plaintiff Daniel Robinson is an individual residing in Berkeley, California. In 2013, Plaintiff purchased a new 2013 Jetta TDI Sportswagon CleanDiesel from Volkswagen of Oakland, an authorized Volkswagen dealer in Oakland, California. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully

1    used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so

2    Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with

3    United States emissions standards, was properly EPA certified, and would retain all of its operating

4    characteristics throughout its useful life.

5    **D.    Colorado Plaintiffs**

6          **1.    Jonathon Horacek**

7          18.    Plaintiff Jonathon Horacek is an individual residing in Colorado Springs, Colorado.

8    Plaintiff purchased a 2012 Volkswagen Golf TDI CleanDiesel from Al Serra Volkswagen, an

9    authorized Volkswagen dealer in Colorado Springs, Colorado.  Plaintiff purchased, and still owns,

10   this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an

11   emissions control "defeat device" which caused the vehicle to get an undue EPA certification and

12   pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including

13   NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future

14   attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully

15   used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so

16   Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with

17   United States emissions standards, was properly EPA certified, and would retain all of its operating

18   characteristics throughout its useful life.

19   **E.    Connecticut Plaintiffs**

20         **1.    Stefanie Beaudreault**

21         19.    Plaintiff Stefanie Beaudreault is an individual residing in Middletown, Connecticut.

22   In 2012, Plaintiff purchased a new 2012 Jetta TDI CleanDiesel from Bertera Subaru, an authorized

23   Volkswagen dealer in Hartford, Connecticut.  Plaintiff purchased, and still owns, this vehicle.

24   Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions

25   control "defeat device" which caused the vehicle to get an undue EPA certification and pass

26   emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.

27   The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future

28   attempted repairs, and diminished value of her vehicle.  Volkswagen knew about and purposefully

1    used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so

2    Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied

3    with United States emissions standards, was properly EPA certified, and would retain all of its

4    operating characteristics throughout its useful life.

5    **F.    Florida Plaintiffs**

6        **1.    James Babiak**

7        20.    Plaintiff James Babiak is an individual residing in Bradenton, Florida.  In 2011,

8    Plaintiff purchased a new 2011 Golf TDI CleanDiesel from Sunset Volkswagen, an authorized

9    Volkswagen dealer in Sarasota, Florida.  Plaintiff purchased, and still owns, this vehicle.  Unknown

10   to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat

11   device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at

12   all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat

13   device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and

14   diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat

15   device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased

16   his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States

17   emissions standards, was properly EPA certified, and would retain all of its operating characteristics

18   throughout its useful life.

19   **G.    Georgia Plaintiffs**

20       **1.    Van Haynes**

21       21.    Plaintiff Van Haynes is an individual residing in Cumming, Georgia.  In October

22   2014, Plaintiff purchased a new 2015 Volkswagen Golf TDI CleanDiesel from Stone Mountain

23   Volkswagen, an authorized Volkswagen dealer in Stone Mountain, Georgia.  Plaintiff purchased,

24   and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was

25   equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA

26   certification and pass emissions tests, but at all other times emit 40 times the allowed level of

27   pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

28   of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew

1  about and purposefully used the "defeat device," but did not disclose the "defeat device" and its

2  effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

3  vehicle complied with United States emissions standards, was properly EPA certified, and would

4  retain all of its operating characteristics throughout its useful life.

5  **H.    Illinois Plaintiffs**

6  **1.    David Goodson**

7  22.    Plaintiff David Goodson is an individual residing in Wilmette, Illinois. In 2015,

8  Plaintiff purchased a new 2015 Golf TDI CleanDiesel from Autobarn Volkswagen, an authorized

9  Volkswagen dealer in Evanston, Illinois. Plaintiff purchased, and still owns, this vehicle. Unknown

10  to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat

11  device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at

12  all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat

13  device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and

14  diminished value of his vehicle. Volkswagen knew about and purposefully used the "defeat

15  device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased

16  his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States

17  emissions standards, was properly EPA certified, and would retain all of its operating characteristics

18  throughout its useful life.

19  **I.    Kentucky Plaintiffs**

20  **1.    Emily Fisher**

21  23.    Plaintiff Emily Fisher is an individual residing in Louisville, Kentucky. In 2010,

22  Plaintiff purchased a new 2010 Jetta TDI Sportswagon CleanDiesel from Clapp Auto Group (now

23  Sam Swope Volkswagen), an authorized Volkswagen dealer in Clarksville, Indiana. Plaintiff

24  purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased,

25  it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue

26  EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of

27  pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-

28  of-pocket loss, future attempted repairs, and diminished value of her vehicle. Volkswagen knew

about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**J.    Maine Plaintiffs**

      **1.    Kshanti Greene**

      24.    Plaintiff Kshanti Greene is an individual residing in Carlisle, Maine.  In May 2010, Plaintiff purchased a new 2010 Volkswagen Jetta Sportswagon CleanDiesel from Chapman Scottsdale Hyundai, an authorized Volkswagen dealer in Scottsdale, Arizona.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**K.    Massachusetts Plaintiffs**

      **1.    John Halloran**

      25.    Plaintiff John Halloran is an individual residing in Cambridge, Massachusetts.  In 2012, Plaintiff purchased a new Jetta TDI Sportswagon CleanDiesel from an authorized Volkswagen/Audi.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not

1    disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the

2    reasonable, but mistaken, belief that his vehicle complied with United States emissions standards,

3    was properly EPA certified, and would retain all of its operating characteristics throughout its useful

4    life.

5    **L.    Minnesota Plaintiffs**

6          **1.    Scott Moen**

7          26.    Plaintiff Scott Moen is an individual residing in St. Paul, Minnesota.  In 2015,

8    Plaintiff purchased a used 2013 Golf and 2010 Jetta Volkswagen TDI CleanDiesel from Schmelz

9    Countryside Volkswagen, an authorized Volkswagen dealer in Maplewood, Minnesota, and a used.

10   Plaintiff purchased, and still owns, these vehicles.  Unknown to Plaintiff, at the time the vehicles

11   were purchased, they were equipped with an emissions control "defeat device" which caused the

12   vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40

13   times the allowed level of pollutants, including NOx.  The use of the "defeat device" by

14   Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value

15   of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not

16   disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the

17   reasonable, but mistaken, belief that his vehicles complied with United States emissions standards,

18   was properly EPA certified, and would retain all of its operating characteristics throughout its useful

19   life.

20   **M.    Missouri Plaintiffs**

21          **1.    Grant Gall**

22          27.    Plaintiff Grant Gall is an individual residing in Macon, Missouri.  In 2015, Plaintiff

23   purchased a new 2015 Passat TDI SEL Premium CleanDiesel from an authorized Volkswagen

24   dealer.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the

25   vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the

26   vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40

27   times the allowed level of pollutants, including NOx.  The use of the "defeat device" by

28   Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value

1   of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not

2   disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the

3   reasonable, but mistaken, belief that his vehicle complied with United States emissions standards,

4   was properly EPA certified, and would retain all of its operating characteristics throughout its useful

5   life.

6   **N.    Nevada Plaintiffs**

7        **1.    Anthony DeMartino**

8        28.    Plaintiff Anthony DeMartino is an individual residing in Las Vegas.  In September

9   2014, Plaintiff purchased a new 2015 Volkswagen Golf TDI SEL CleanDiesel from Hewlett

10  Volkswagen, an authorized Volkswagen dealer in Georgetown, Texas.  Plaintiff purchased, and still

11  owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped

12  with an emissions control "defeat device" which caused the vehicle to get an undue EPA

13  certification and pass emissions tests, but at all other times emit 40 times the allowed level of

14  pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

15  of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew

16  about and purposefully used the "defeat device," but did not disclose the "defeat device" and its

17  effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

18  vehicle complied with United States emissions standards, was properly EPA certified, and would

19  retain all of its operating characteristics throughout its useful life.

20  **O.    New Hampshire Plaintiffs**

21       **1.    Petar Ramadanovic**

22       29.    Plaintiff Petar Ramadanovic is an individual residing in Portsmouth, New

23  Hampshire.  On July 22, 2015, Plaintiff purchased a new 2015 Golf TDI CleanDiesel from Seacoast

24  VW, an authorized Volkswagen dealer in Greenland, NH.  Plaintiff purchased, and still owns, this

25  vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an

26  emissions control "defeat device" which caused the vehicle to get an undue EPA certification and

27  pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including

28  NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future

1   attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully

2   used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so

3   Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with

4   United States emissions standards, was properly EPA certified, and would retain all of its operating

5   characteristics throughout its useful life.

6   **P.**    **New York Plaintiffs**

7        **1.**    **Christopher Monroe**

8        30.    Plaintiff Christopher Monroe is an individual residing in Ithaca, New York.  In

9   October 2010, Plaintiff purchased a new 2010 Volkswagen Jetta TDI Sedan CleanDiesel from

10   Maguire Automotive, an authorized Volkswagen dealer in Ithaca, New York.  Plaintiff purchased,

11   and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was

12   equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA

13   certification and pass emissions tests, but at all other times emit 40 times the allowed level of

14   pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

15   of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew

16   about and purposefully used the "defeat device," but did not disclose the "defeat device" and its

17   effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

18   vehicle complied with United States emissions standards, was properly EPA certified, and would

19   retain all of its operating characteristics throughout its useful life.

20   **Q.**    **North Carolina Plaintiffs**

21        **1.**    **Melissa Bracken**

22        31.    Plaintiff Melissa Bracken is an individual residing in Cary, North Carolina.  In 2013,

23   Plaintiff purchased a new 2014 Volksagen Golf 4D TDI CleanDiesel from Southern States

24   Volkswagen an authorized Volkswagen dealer in Durham, North Carolina.  Plaintiff purchased, and

25   still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was

26   equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA

27   certification and pass emissions tests, but at all other times emit 40 times the allowed level of

28   pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**R.     Ohio Plaintiffs**

**1.     Rezeda Dozier**

32.     Plaintiff Rezeda Dozier is an individual residing in Fairfield Township, Ohio. In January 2014, Plaintiff purchased a new 2014 Jetta TDI CleanDiesel from Fairfield Volkswagen, an authorized Volkswagen dealer in Fairfield, Ohio. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**S.     Oregon Plaintiffs**

**1.     Jon Dull**

33.     Plaintiff Jon Dull is an individual residing in Salem, Oregon. In July 2012, Plaintiff purchased a new 2012 Jetta Wagon TDI CleanDiesel from Dick Hannah Volkswagen, an authorized Volkswagen dealer in Vancouver, Washington. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future

attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**T.      Pennsylvania Plaintiffs**

  **1.      Melissa Fedorczyk**

34.      Plaintiff Melissa Fedorczyk is an individual residing in Lancaster, Pennsylvania.  In July 2009, Plaintiff purchased a new 2009 Volkswagen Jetta TDI Sportswagon CleanDiesel from an authorized Volkswagen dealer in Lancaster, Pennsylvania.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

**U.      Texas Plaintiffs**

  **1.      David Antellocy**

35.      Plaintiff David Antellocy is an individual residing in Round Rock, Texas.  In October 2014, Plaintiff purchased a used 2010 Volkswagen Golf TDI CleanDiesel from Maund Volkswagen, an authorized Volkswagen dealer in Austin, Texas.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

1   of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew

2   about and purposefully used the "defeat device," but did not disclose the "defeat device" and its

3   effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

4   vehicle complied with United States emissions standards, was properly EPA certified, and would

5   retain all of its operating characteristics throughout its useful life.

6   **V.      Washington Plaintiffs**

7         **1.      Joshua Campbell**

8         36.      Plaintiff Joshua Campbell is an individual residing in Seattle, Washington.  In

9   December 2012, Plaintiff purchased a new 2013 Volkswagen Golf CleanDiesel from University

10  Volkswagen, an authorized Volkswagen dealer in Seattle, Washington.  Plaintiff purchased, and still

11  owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped

12  with an emissions control "defeat device" which caused the vehicle to get an undue EPA

13  certification and pass emissions tests, but at all other times emit 40 times the allowed level of

14  pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

15  of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew

16  about and purposefully used the "defeat device," but did not disclose the "defeat device" and its

17  effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his

18  vehicle complied with United States emissions standards, was properly EPA certified, and would

19  retain all of its operating characteristics throughout its useful life.

20  **W.      Wisconsin Plaintiffs**

21        **1.      Alfred Howe**

22        37.      Plaintiff Alfred Howe is an individual residing in Williams Bay, Wisconsin.  In

23  August 2011, Plaintiff purchased a new 2012 Volkswagen Golf TDI CleanDiesel from Hall

24  Volkswagen, an authorized Volkswagen dealer in Brookfield, Wisconsin.  Plaintiff purchased, and

25  still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was

26  equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA

27  certification and pass emissions tests, but at all other times emit 40 times the allowed level of

28  pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff out-

of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

38.     Plaintiffs selected and ultimately purchased their vehicles, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen.  Plaintiffs recall that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its certification of EPA compliance.  Had Volkswagen disclosed that the CleanDiesel actually emitted 40 times the permitted levels of pollutants, including NOx, Plaintiffs would not have purchased the vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

39.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

40.     Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiffs or Class members of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

## X.     Defendant

41.     Volkswagen Group of America, Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States.  Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel

1    engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen also

2    developed and disseminated the owner's manuals and warranty booklets, advertisements, and other

3    promotional materials relating to the Affected Vehicles.

V.    **TOLLING OF THE STATUTE OF LIMITATIONS**

4

5    **A.    Discovery Rule Tolling**

6           42.    Class Members had no way of knowing about Volkswagen's deception with respect to

7    its CleanDiesel engine system and "defeat device."  It took federal EPA and California Air Resources

8    Board investigations to uncover Volkswagen's deception, which involved sophisticated software

9    manipulation on Volkswagen's part.  As reported by the *Los Angeles Times* on September 18, 2015, it

10   took California Air Resources Board testing on a special dynamometer in a laboratory, open road

11   testing using portable equipment, and the use of special testing devised by the Board to uncover

12   Volkswagen's scheme and to detect how software on the engine's electronic control module was

13   deceiving emissions certifications tests.  Plainly, Volkswagen was intent on expressly hiding its

14   behavior from regulators and consumers.  This is the quintessential case for tolling.

15          43.    Within the time period of any applicable statutes of limitation, Plaintiffs and

16   members of the proposed classes could not have discovered through the exercise of reasonable

17   diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting

18   the Company's true position with respect to the emission qualities of its vehicles.

19          44.    Plaintiffs and the other Class Members did not discover, and did not know of facts

20   that would have caused a reasonable person to suspect, that Volkswagen did not report information

21   within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a

22   reasonable and diligent investigation have disclosed that Volkswagen had information in its

23   possession about the existence of its sophisticated emissions scheme and that it opted to conceal that

24   information, which was discovered by Plaintiffs only shortly before this action was filed.  Nor in

25   any event would such an investigation on the part of Plaintiffs and other Class members have

26   disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust

27   that Plaintiffs and other Class members had placed in its representations, or that, necessarily,

28   Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the

CLASS ACTION COMPLAINT                          - 18 -
000700-00  809975 V1

1    true quality and quantity of the emissions, and the emissions software, of its vehicles, or of

2    Volkswagen's emissions scheme.

3            45.    For these reasons, all applicable statutes of limitation have been tolled by operation

4    of the discovery rule with respect to claims as to all vehicles identified herein.

5    **B.     Fraudulent Concealment Tolling**

6            46.    All applicable statutes of limitation have also been tolled by Volkswagen's knowing

7    and active fraudulent concealment and denial of the facts alleged herein throughout the time period

8    relevant to this action.

9            47.    Instead of disclosing its emissions scheme, or that the quality and quantity of

10   emissions from the subject vehicles were far worse than represented, and of its disregard of federal

11   and state law, Volkswagen falsely represented that its vehicles complied with federal and state

12   emissions standards, and that it was a reputable manufacturer whose representations could be

13   trusted.

14   **C.     Estoppel**

15           48.    Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class

16   members the true character, quality, and nature of emissions from the vehicles at issue, and of those

17   vehicles' emissions systems, and of the compliance of those systems with applicable federal and

18   state law.

19           49.    Volkswagen knowingly, affirmatively, and actively concealed the true nature,

20   quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

21           50.    Volkswagen was also under a continuous duty to disclose to Plaintiffs and Class

22   members that it had engaged in the scheme complained of herein to evade federal and state

23   emissions and clean air standards, and that it systematically devalued compliance with, and

24   deliberately flouted, federal and state law regulating vehicle emissions and clean air.

25           51.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of

26   limitations in defense of this action.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.    CLASS ALLEGATIONS

52.    Plaintiffs brings this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Virginia Subclass**

All persons or entities in the state of California who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Arizona Subclass**

All persons or entities in the state of Arizona who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The California Subclass**

All persons or entities in the state of California who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Colorado Subclass**

All persons or entities in the state of Colorado who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Connecticut Subclass**

All persons or entities in the state of Connecticut who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

1

**The Florida Subclass**

2

All persons or entities in the state of Florida who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

3

4

5

**The Georgia Subclass**

6

All persons or entities in the state of Georgia who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

7

8

9

**The Illinois Subclass**

10

All persons or entities in the state of Illinois who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

11

12

13

**The Kentucky Subclass**

14

All persons or entities in the state of Kentucky who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

15

16

17

**The Maine Subclass**

18

All persons or entities in the state of Maine who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

19

20

21

**The Massachusetts Subclass**

22

All persons or entities in the state of Massachusetts who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

23

24

25

**The Minnesota Subclass**

26

All persons or entities in the state of Minnesota who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

27

28

**The Missouri Subclass**

All persons or entities in the state of Missouri who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Nevada Subclass**

All persons or entities in the state of Nevada who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New Hampshire Subclass**

All persons or entities in the state of New Hampshire who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The New York Subclass**

All persons or entities in the state of New York who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The North Carolina Subclass**

All persons or entities in the state of North Carolina who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Ohio Subclass**

All persons or entities in the state of Ohio who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

**The Oregon Subclass**

All persons or entities in the state of Oregon who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

1

### The Pennsylvania Subclass

All persons or entities in the state of Pennsylvania who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Texas Subclass

All persons or entities in the state of Texas who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Washington Subclass

All persons or entities in the state of Washington who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

### The Wisconsin Subclass

All persons or entities in the state of Wisconsin who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

53.    Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system.  Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

54.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

55.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

56.     <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

57.     <u>Commonality and Predominance</u>:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a)    Whether Volkswagen engaged in the conduct alleged herein;

      b)    Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

      c)    Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

      d)    Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

      e)    Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

      f)    Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

      g)    Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

      h)    Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i)      Whether Plaintiffs and the other Class members are entitled to equitable

relief, including, but not limited to, restitution or injunctive relief; and

j)      Whether Plaintiffs and the other Class members are entitled to damages and

other monetary relief and, if so, in what amount.

58.     Typicality:  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

59.     Adequacy:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

60.     Declaratory and Injunctive Relief:  Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

61.     Superiority:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   VIOLATIONS ALLEGED

**A.    Claims Brought on Behalf of the Nationwide Class and the Virginia Subclass Under Virginia Law**

### COUNT I

### FRAUD BY CONCEALMENT UNDER VIRGINIA LAW

62.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

63.     This claim is brought on behalf of the Nationwide Class and the Virginia Subclass.

64.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

65.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

66.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

67.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

68.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

69.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

70.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

71.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

72.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result

of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

73.     The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

74.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

75.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

76.     Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Nationwide Class.  As necessary, and in the alternative, Plaintiffs stand ready to plead sub-classes, based on the residences at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of states other than Virginia.

1

## COUNT II
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (Va. Code Ann. §§ 59.1-196, *et seq.*)

2

3

4

77.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5

78.     This claim is brought on behalf of the Nationwide Class and the Virginia Subclass.

6

7

79.     The Virginia Consumer Protection prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  VA. CODE ANN. § 59.1-200(A).

8

9

10

11

12

80.     Volkswagen is a "person" as defined by VA. CODE ANN. § 59.1-198.  The transactions between Plaintiffs and the other Class members on one hand and Volkswagen on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiffs and the other Class members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

13

14

15

16

17

81.     In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in acts and practices violating VA. CODE ANN. § 59.1-200(A), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

18

19

20

21

22

23

82.     Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

24

25

83.     Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

26

27

28

84.     Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

85.     Volkswagen actively and willfully concealed and/or suppressed the material facts regarding the defective and non-EPA compliant CleanDiesel engine system, the "defeat device" and the Affected Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiffs and the other Class members and to induce Plaintiffs and the other Class members to purchase or lease Affected Vehicles at a higher price, which did not match the Affected Vehicles' true value. Plaintiffs and the other Class members therefore seek treble damages.

### COUNT III

### BREACH OF CONTRACT
**(Based on Virginia Law)**

86.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

87.     Plaintiffs bring this Count on behalf of the Nationwide Class and Virginia Subclass.

88.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the CleanDiesel engine system was not EPA-compliant and the existence of the "defeat device" as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain non EPA-compliant engine systems and a "defeat device."  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

89.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

1    Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or

2    failing to disclose the CleanDiesel engine system was not EPA-compliant and failing to disclose the

3    existence of the "defeat device," including information known to Volkswagen rendering each

4    Affected Vehicle illegal under U.S. environmental laws, and thus less valuable, than vehicles not

5    equipped with CleanDiesel engine systems.

6         90.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and

7    the Class have been damaged in an amount to be proven at trial, which shall include, but is not

8    limited to, all compensatory damages, incidental and consequential damages, and other damages

9    allowed by law.

10   **B.    Claims Brought on Behalf of the Arizona Subclass**

11                          **COUNT I**

12           **VIOLATIONS OF THE CONSUMER FRAUD ACT**
             (ARIZ. REV. STAT. §§ 44-1521, *et seq.*)

13

14        91.    Plaintiff Mark Carnett ("Plaintiff," for purposes of all Arizona Subclass Counts)

15   incorporates by reference all preceding allegations as though fully set forth herein.

16        92.    Plaintiff brings this Count on behalf of the Arizona Subclass.

17        93.    Plaintiff and Volkswagen are each "persons" as defined by ARIZ. REV. STAT. § 44-

18   1521(6).  The Affected Vehicles are "merchandise" as defined by ARIZ. REV. STAT. § 44-1521(5).

19        94.    The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any

20   person of any deception, deceptive act or practice, fraud, false pretense, false promise,

21   misrepresentation, or concealment, suppression or omission of any material fact with intent that

22   others rely upon such concealment, suppression or omission, in connection with the sale or

23   advertisement of any merchandise whether or not any person has in fact been misled, deceived or

24   damaged thereby."  ARIZ. REV. STAT. § 44-1522(A).

25        95.    By failing to disclose and actively concealing that the CleanDiesel engine systems

26   were not EPA-compliant and used a "defeat device" in the Affected Vehicles, Volkswagen engaged

27   in deceptive business practices prohibited by the Arizona Consumer Fraud Act, ARIZ. REV. STAT.

28   § 44-1522(A), including (1) representing that Affected Vehicles have characteristics, uses, benefits,

and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

96.     As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel system that were either false or misleading.  Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

97.     Volkswagen knew that the CleanDiesel engine systems in the Affected Vehicles were defectively designed or manufactured, did not comply with EPA regulations, used a "defeat device," and were not suitable for their intended use.  Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

98.     Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

          i)      Possessed exclusive knowledge of the defects rendering the Affected Vehicles illegal under EPA regulations;

          ii)     Intentionally concealed the defects associated with CleanDiesel engine systems through its deceptive marketing campaigns and use of the "defeat device" that it designed to hide the defects in the CleanDiesel engine system; and/or

          iii)    Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

99.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system in Affected Vehicles.

100.    As a result of its violations of the Arizona Consumer Fraud Act detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.

1    Plaintiff currently owns or leases, or within the class period has owned or leased, an Affected

2    Vehicle that is defective.  Defects associated with the CleanDiesel engine system have caused the

3    value of Affected Vehicles to decrease.

4        101.    Plaintiff and the Class sustained damages as a result of the Volkswagen's unlawful

5    acts and are, therefore, entitled to damages and other relief as provided under the Arizona Consumer

6    Fraud Act.

7        102.    Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's

8    violation of the Arizona Consumer Fraud Act as provided in ARIZ. REV. STAT. § 12-341.01.

**COUNT II**

**BREACH OF CONTRACT**
**(Based on Arizona Law)**

12       103.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

13   herein.

14       104.    Plaintiff brings this Count on behalf of the Arizona Subclass.

15       105.    Volkswagen's misrepresentations and omissions alleged herein, including

16   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

17   defective design as alleged herein, caused Plaintiff and the other Arizona Subclass members to

18   make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

19   omissions, Plaintiff and the other Arizona Subclass members would not have purchased or leased

20   these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

21   they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

22   contain the CleanDiesel engine system and which were not marketed as including such a system.

23   Accordingly, Plaintiff and the other Arizona Subclass members overpaid for their Affected Vehicles

24   and did not receive the benefit of their bargain.

25       106.    Each and every sale or lease of an Affected Vehicle constitutes a contract between

26   Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

27   Plaintiff and the other Arizona Subclass members defective Affected Vehicles and by

28   misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

1    defective design, including information known to Volkswagen rendering each Affected Vehicle non

2    EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine

3    system.

4           107.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

5    the Arizona Subclass have been damaged in an amount to be proven at trial, which shall include, but

6    is not limited to, all compensatory damages, incidental and consequential damages, and other

7    damages allowed by law.

8                                          **COUNT III**

9                                **FRAUDULENT CONCEALMENT**
                                     **(Based on Arizona Law)**
10

11          108.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

12   herein.

13          109.    Plaintiff brings this Count on behalf of the Arizona Subclass.

14          110.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not

15   EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied

16   Plaintiff and the other Class members information that is highly relevant to their purchasing

17   decision.

18          111.    Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other

19   forms of communication, including standard and uniform material provided with each car, that the

20   Affected Vehicles it was selling were new, had no significant defects, complied with EPA

21   regulations and would perform and operate properly when driven in normal usage.

22          112.    Volkswagen knew these representations were false when made.

23          113.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members

24   were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles

25   contained faulty and defective CleanDiesel engine system, as alleged herein.

26          114.    Volkswagen had a duty to disclose that these Affected Vehicles were defective,

27   unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected

28   Vehicles would be rendered inoperative due to the "defeat device" installed in the defective

CLASS ACTION COMPLAINT                          - 35 -
000700-00  809975 V1

CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

115.    The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

116.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

117.    Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Affected Vehicles.

118.    As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

119.    Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

**C.      Claims Brought on Behalf of the California Subclass**

**COUNT I**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)**

120.    Plaintiff Daniel Robinson ("Plaintiff," for purposes of all California Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

121.    Plaintiff bring this Count on behalf of the California Subclass.

122.    California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

123.    Volkswagen's conduct, as described herein, was and is in violation of the UCL. Volkswagen's conduct violates the UCL in at least the following ways:

      i.    By knowingly and intentionally concealing from Plaintiff and the other California Subclass members that the Affected Vehicles suffer from a design defect while obtaining money from Plaintiffs and the Class;

      ii.    By marketing Affected Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

      iii.    By purposefully installing an illegal "defeat device" in the Affected Vehicles to fraudulently obtain EPA certification and cause Affected Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

      iv.    By violating federal laws, including the Clean Air Act; and

      v.    By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

124.    Volkswagen's misrepresentations and omissions alleged herein caused Plaintiff and the other California Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Subclass members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and California emissions standards.

125.    Accordingly, Plaintiff and the other California Subclass members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

126. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under CAL. BUS. & PROF. CODE § 17200.

127. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. BUS. & PROF. CODE § 3345; and for such other relief set forth below.

## COUNT II

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
(CAL. BUS. & PROF. CODE §§ 1750, *et seq.*)

128. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

129. Plaintiff brings this Count on behalf of the California Subclass.

130. California's Consumers Legal Remedies Act ("CLRA"), CAL. BUS. & PROF. CODE §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

131. The Affected Vehicles are "goods" as defined in CAL. BUS. & PROF. CODE § 1761(a).

132. Plaintiff and the other California Subclass members are "consumers" as defined in CAL. BUS. & PROF. CODE § 1761(d), and Plaintiff, the other California Subclass members, and Volkswagen are "persons" as defined in CAL. BUS. & PROF. CODE § 1761(c).

133. As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

134. In purchasing or leasing the Affected Vehicles, Plaintiff and the other California Subclass members were deceived by Volkswagen's failure to disclose that the Affected Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

135.    Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA.  Volkswagen's conduct violates at least the following enumerated CLRA provisions:

  i.     CAL. BUS. & PROF. CODE § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

  ii.    CAL. BUS. & PROF. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

  iii.   CAL. BUS. & PROF. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

  iv.    CAL. BUS. & PROF. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

136.    Plaintiff and the other California Subclass members have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with emissions standards.

137.    Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

138.    The facts concealed and omitted by Volkswagen to Plaintiff and the other California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the other California Subclass members known about the defective nature of the Affected Vehicles, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

139.    Plaintiffs have provided Volkswagen with notice of its violations of the CLRA pursuant to CAL. BUS. & PROF. CODE § 1782(a).  The notice was transmitted to Volkswagen on September 21, 2015.

140.   Plaintiff's and the other California Subclass members' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

141.   Therefore, Plaintiff and the other California Subclass members are entitled to equitable and monetary relief under the CLRA.

## COUNT III

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)

142.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

143.   Plaintiff brings this Count on behalf of the California Subclass.

144.   California Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

145.   Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

146.   Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

147.   Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected Vehicles, Plaintiff and the other Class members relied on the

misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Affected Vehicles. Volkswagen's representations turned out not to be true because the Affected Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative. Had Plaintiff and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

148. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

149. Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT IV**

**BREACH OF CONTRACT**
**(Based on California Law)**

150. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

151. Plaintiff brings this Count on behalf of the California Subclass.

152. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other California Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would

1   have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel

2   engine system and the "defeat device."  Accordingly, Plaintiff and the other California Subclass

3   members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

4        153.    Each and every sale or lease of an Affected Vehicle constitutes a contract between

5   Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

6   Plaintiff and the other California Subclass members defective Affected Vehicles and by

7   misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design,

8   including information known to Volkswagen rendering each Affected Vehicle less safe and

9   emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine

10  systems and "defeat devices."

11       154.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

12  the California Subclass have been damaged in an amount to be proven at trial, which shall include,

13  but is not limited to, all compensatory damages, incidental and consequential damages, and other

14  damages allowed by law.

15                               **COUNT V**

16                       **FRAUD BY CONCEALMENT**
                          **(Based on California Law)**
17

18       155.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set

19  forth herein.

20       156.    This claim is brought on behalf of California Subclass members.

21       157.    Volkswagen intentionally concealed and suppressed material facts concerning the

22  quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the

23  very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI Clean

24  Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle

25  emissions standards by installing software designed to conceal its vehicles' emissions of the

26  pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software

27  installed on the vehicles at issue was designed nefariously to kick-in during emissions certification

28  testing, such that the vehicles would show far lower emissions than when actually operating on the

road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

158.     Plaintiff and California Subclass members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiff and California Subclass members did not, and could not, unravel Volkswagen's deception on their own.

159.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiff and California Subclass members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

160.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and California Subclass Members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its

customers, including Plaintiff and California Subclass Members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

161.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the Affected Vehicles because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or California Subclass Members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and California Subclass members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and California Subclass members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

162.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and California Subclass members.

1    163.    On information and belief, Volkswagen has still not made full and adequate

2    disclosures, and continues to defraud Plaintiff and California Subclass members by concealing

3    material information regarding the emission qualities of its referenced vehicles and its emissions

4    scheme.

5    164.    Plaintiff and California Subclass members were unaware of the omitted material

6    facts referenced herein, and they would not have acted as they did if they had known of the

7    concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel

8    cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting

9    vehicles, or would have taken other affirmative steps in light of the information concealed from

10   them.  Plaintiff's and California Subclass Members' actions were justified.  Volkswagen was in

11   exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or

12   California Subclass Members.

13   165.    Because of the concealment and/or suppression of the facts, Plaintiff and California

14   Subclass members have sustained damage because they own vehicles that are diminished in value as

15   a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions

16   and Volkswagen's failure to timely disclose the actual emission qualities and quantities of millions

17   of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's

18   corporate policies.  Had Plaintiff and California Subclass members been aware of Volkswagen's

19   emissions schemes with regard to the vehicles at issue, and the company's callous disregard for

20   compliance with applicable federal and state law and regulations, Plaintiff and California Subclass

21   members who purchased or leased new or certified previously owned vehicles would have paid less

22   for their vehicles or would not have purchased or leased them at all.

23   166.    The value of Plaintiff's and California Subclass Members' vehicles has diminished

24   as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly

25   tarnished the Volkswagen and Audi brand names attached to Plaintiff's and California Subclass

26   members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected

27   Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

28

CLASS ACTION COMPLAINT                    - 45 -
000700-00  809975 V1

167.     Accordingly, Volkswagen is liable to Plaintiff and California Subclass members for damages in an amount to be proven at trial.

168.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and California Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**D.     Claims Brought on Behalf of the Colorado Subclass**

### COUNT I

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
#### (COLO. REV. STAT. §§ 6-1-101, *et seq.*)

169.     Plaintiff Jonathon Horacek ("Plaintiff," for purposes of all Colorado Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

170.     Plaintiff brings this Count on behalf of the Colorado Subclass.

171.     Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods."  COLO. REV. STAT. § 6-1-105(1)(b), (e).  The CCPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised."  CAL. BUS. & PROF. CODE. § 6-1-105(1)(g), (i).

172.     Volkswagen is a "person" within the meaning of CAL. BUS. & PROF. CODE. § 6-1-102(6).

173.     In the course of Volkswagen's business, it willfully misrepresented and failed to disclose, and actively concealed, that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have

characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

174. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

175. Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members.

176. Plaintiff and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

## COUNT II

### STRICT PRODUCT LIABILITY
**(Based on Colorado Law)**

177. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

178. Plaintiff brings this Count on behalf of the Colorado Subclass.

179. Colorado law recognizes an action for product defects that complements Colorado's Product Liability Statute, COLO. REV. STAT. TITLE 13, Article 21, Part 4.

180. Volkswagen is a "manufacturer" and "seller" of the Affected Vehicles within the meaning of COLO. REV. STAT. § 13-21-401(1).

181. Volkswagen manufactured and sold the Affected Vehicles in a defective condition and in a condition that was unreasonably dangerous to drivers, other motorists, pedestrians, and others or to their property, including persons who may reasonably be expected to use, consume, or be affected by them, in at least the following respects: (i) the Affected Vehicles were defectively designed, assembled, fabricated, produced, and constructed in that they were not EPA compliant

and used a "defeat device"; and (ii) the Affected Vehicles were not accompanied by adequate warnings about their defective nature.

182.    The Affected Vehicles were defective and unreasonably dangerous at the time they were sold by Volkswagen and were intended to and did reach Plaintiff and the other Class Members in substantially the same condition as they were in when they were manufactured, sold, and left the control of Volkswagen.

183.    Plaintiff and the other Class members are persons who were reasonably expected to use, consume, or be affected by the Affected Vehicles.

184.    As a direct and proximate result of the defective and illegal conditions of the Affected Vehicles, Plaintiff and the other Class members have suffered damages.

**COUNT III**

**BREACH OF CONTRACT**
**(Based on Colorado Law)**

185.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

186.    Plaintiff brings this Count on behalf of the Colorado Subclass.

187.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Colorado Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Colorado Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Colorado Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

188.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

1    Plaintiff and the other Colorado Subclass members defective Affected Vehicles and by

2    misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

3    defective design, including information known to Volkswagen rendering each Affected Vehicle non

4    EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine

5    system.

6         189.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

7    the Colorado Subclass have been damaged in an amount to be proven at trial, which shall include,

8    but is not limited to, all compensatory damages, incidental and consequential damages, and other

9    damages allowed by law.

10                                      **COUNT IV**

11                            **FRAUDULENT CONCEALMENT**
                               **(Based on Colorado Law)**

12

13        190.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

14    herein.

15        191.    Plaintiff brings this Count on behalf of the Colorado Subclass.

16        192.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not

17    EPA-compliant and used a "defeat device", or acted with reckless disregard for the truth, and denied

18    Plaintiff and the other Class members information that is highly relevant to their purchasing

19    decision.

20        193.    Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other

21    forms of communication, including standard and uniform material provided with each car, that the

22    Affected Vehicles it was selling were new, had no significant defects, complied with EPA

23    regulations and would perform and operate properly when driven in normal usage.

24        194.    Volkswagen knew these representations were false when made.

25        195.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members

26    were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles

27    contained faulty and defective CleanDiesel engine system, as alleged herein.

28

196. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

197. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

198. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

199. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

200. As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

201. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

**E.**     **Claims Brought on Behalf of the Connecticut Subclass**

**COUNT I**

**VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT**
(CONN. GEN. STAT. ANN. §§ 42-110A, *et seq.*)

202.     Plaintiff Stefanie Beaudreault ("Plaintiff," for purposes of all Connecticut Subclass

Counts) incorporates by reference all preceding allegations as though fully set forth herein.

203.     Plaintiff brings this Count on behalf of the Connecticut Subclass.

204.     Plaintiff and Volkswagen are each "persons" as defined by CONN. GEN. STAT. ANN.

§ 42-110a(3).

205.     The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person

shall engage in unfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce."  CONN. GEN. STAT. ANN. § 42-110b(a).  The CUTPA further

provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

206.     By failing to disclose and actively concealing that the CleanDiesel engine systems

were not EPA-compliant and used a "defeat device" in the Affected Vehicles, Volkswagen engaged

in deceptive business practices prohibited by the CUTPA, including (1) representing that Affected

Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing

that Affected Vehicles are of a particular standard, quality, and grade when they are not,

(3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in

acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

207.     As alleged above, Volkswagen made numerous material statements about the

benefits and characteristics of the CleanDiesel engine system that were either false or misleading.

Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising

and representations as a whole.

208.     Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were

defectively designed or manufactured, were not EPA-compliant, and were not suitable for their

intended use.  Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a

duty to do so.

209.     Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

a)     Possessed exclusive knowledge of the defects rendering the Affected Vehicles illegal under EPA standards;

b)     Intentionally concealed the defects associated with CleanDiesel through its deceptive marketing campaigns that it designed to hide the defects in the CleanDiesel engine system; and/or

c)     Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

210.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system.

211.     As a result of its violations of the CUTPA detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.  Plaintiff currently owns or leases, or within the class period has owned or leased, an Affected Vehicle that is defective. Defects associated with the CleanDiesel engine system have caused the value of Affected Vehicles to decrease.

212.     Plaintiff and the Class sustained damages as a result of the Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

213.     Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violation of the CUTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

## COUNT II

### BREACH OF CONTRACT
**(Based on Connecticut Law)**

214.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

215.     Plaintiff brings this Count on behalf of the Connecticut Subclass.

216.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Connecticut Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Connecticut Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Connecticut Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

217.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Connecticut Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

218.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Connecticut Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

# COUNT III

## FRAUDULENT CONCEALMENT
### (Based on Connecticut Law)

219.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

220.    Plaintiff brings this Count on behalf of the Connecticut Subclass.

221.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

222.    Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

223.    Volkswagen knew these representations were false when made.

224.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

225.    Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

226.    The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

227.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

228.    Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

229.    As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

230.    Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**F.      Claims Brought on Behalf of the Florida Subclass**

**COUNT I**

**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**(FLA. STAT. §§ 501.201, *et seq.*)**

231.    Plaintiff James Babiak ("Plaintiff," for purposes of all Florida Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

232.    Plaintiff brings this Count on behalf of the Florida Subclass.

233.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.204(1).

234.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat

1    device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unfair

2    methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices

3    as defined in FLA. STAT. § 501.204(1), including representing that Affected Vehicles have

4    characteristics, uses, benefits, and qualities which they do not have; representing that Affected

5    Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles

6    with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

7          235.    Volkswagen's actions as set forth above occurred in the conduct of trade or

8    commerce.

9          236.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class

10   members.

11         237.    Plaintiff and the other Class members were injured as a result of Volkswagen's

12   conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did

13   not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in

14   value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations

15   and omissions.

**COUNT II**

**BREACH OF CONTRACT**
**(Based on Florida Law)**

19         238.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

20   herein.

21         239.    Plaintiff brings this Count on behalf of the Florida Subclass.

22         240.    Volkswagen's misrepresentations and omissions alleged herein, including

23   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

24   defective design as alleged herein, caused Plaintiff and the other Florida Subclass members to make

25   their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

26   omissions, Plaintiff and the other Florida Subclass members would not have purchased or leased

27   these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

28   they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

1    contain the CleanDiesel engine system and which were not marketed as including such a system.

2    Accordingly, Plaintiff and the other Florida Subclass members overpaid for their Affected Vehicles

3    and did not receive the benefit of their bargain.

4          241.    Each and every sale or lease of an Affected Vehicle constitutes a contract between

5    Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

6    Plaintiff and the other Florida Subclass members defective Affected Vehicles and by

7    misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

8    defective design, including information known to Volkswagen rendering each Affected Vehicle non

9    EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine

10   system.

11         242.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

12   the Florida Subclass have been damaged in an amount to be proven at trial, which shall include, but

13   is not limited to, all compensatory damages, incidental and consequential damages, and other

14   damages allowed by law.

15                                   **COUNT III**

16                          **FRAUDULENT CONCEALMENT**
                               **(Based on Florida Law)**
17

18         243.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

19   herein.

20         244.    Plaintiff brings this Count on behalf of the Florida Subclass.

21         245.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not

22   EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied

23   Plaintiff and the other Class members information that is highly relevant to their purchasing

24   decision.

25         246.    Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other

26   forms of communication, including standard and uniform material provided with each car, that the

27   Affected Vehicles it was selling were new, had no significant defects, complied with EPA

28   regulations and would perform and operate properly when driven in normal usage.

247. Volkswagen knew these representations were false when made.

248. The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA-compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

249. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

250. The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

251. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

252. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

253. As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

254. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class

1    members. Plaintiff and the other Class members are therefore entitled to an award of punitive

2    damages.

3    **G.      Claims Brought on Behalf of the Georgia Subclass**

4                                      **COUNT I**

5                   **VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
                          **(GA. CODE ANN. § 10-1-390, *et seq.*)**
6

7           255.    Plaintiff Van Haynes ("Plaintiff," for purposes of all Georgia Subclass Counts)

8    incorporates by reference all preceding allegations as though fully set forth herein.

9           256.    Plaintiffs intend to assert a claim under the Georgia Fair Business Practices Act

10   ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of

11   consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA.

12   CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have

13   sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

14   have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they

15   are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." GA.

16   CODE. ANN. § 10-1-393(b). Plaintiffs will make a demand in satisfaction of GA. CODE. ANN. § 10-

17   1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required

18   30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to

19   actually assert a claim under the Georgia FBPA.

20                                     **COUNT II**

21           **VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
                         **(GA. CODE ANN. § 10-1-370, *et seq.*)**
22

23          257.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set

24   forth herein.

25          258.    This claim is brought only on behalf of the Georgia Subclass.

26          259.    Volkswagen, Plaintiff, and the Georgia Subclass are "persons' within the meaning of

27   Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1-

28   371(5).

260. The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  GA. CODE. ANN. § 10-1-372(a).  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA.

261. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

262. Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

263. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

264. By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Georgia UDTPA.

265. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient,

and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

266.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

267.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Georgia Subclass.

268.     Volkswagen knew or should have known that its conduct violated the Georgia UDTPA.

269.     As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

270.     Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

271.     Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In

1    light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth

2    significantly less than they otherwise would be.

3         272.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true

4    characteristics of the CleanDiesel engine system were material to Plaintiffs and the Georgia

5    Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is

6    worth more than an otherwise comparable vehicle made by a disreputable manufacturer of

7    environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying

8    them.

9         273.    Plaintiffs and the Georgia Subclass suffered ascertainable loss caused by

10   Volkswagen's misrepresentations and its concealment of and failure to disclose material

11   information.

12        274.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain

13   from unfair and deceptive acts or practices under the Georgia UDTPA.  All owners of Affected

14   Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of

15   Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

16        275.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the

17   general public.  Volkswagen's unlawful acts and practices complained of herein affect the public

18   interest.

19        276.    As a direct and proximate result of Volkswagen's violations of the Georgia UDTPA,

20   Plaintiffs and the Georgia Subclass have suffered injury-in-fact and/or actual damage.

21        277.    Plaintiffs seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive

22   practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA

23   per GA. CODE. ANN § 10-1-373.

## COUNT III

## FRAUD BY CONCEALMENT

26        278.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set

27   forth herein.

1    279.    This claim is brought on behalf of the Georgia Subclass.

2    280.    Volkswagen intentionally concealed and suppressed material facts concerning the

3  quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the

4  very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI Clean

5  Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle

6  emissions standards by installing software designed to conceal its vehicles' emissions of the

7  pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software

8  installed on the vehicles at issue was designed nefariously to kick-in during emissions certification

9  testing, such that the vehicles would show far lower emissions than when actually operating on the

10  road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of

11  deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in

12  noxious emissions from these vehicles at 40 times applicable standards.

13    281.    Plaintiffs and Class members reasonably relied upon Volkswagen's false

14  representations.  They had no way of knowing that Volkswagen's representations were false and

15  gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of

16  deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on

17  their own.

18    282.    Volkswagen concealed and suppressed material facts concerning what is evidently

19  the true culture of Volkswagen – one characterized by an emphasis on profits and sales above

20  compliance with federal and state clean air law, and emissions regulations that are meant to protect

21  the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

22  Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation

23  cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

24  intentional manipulation of the system.  That's just a whole other level of not only lying to the

25  government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

26  they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

27  sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

28  into the environment."

283.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

284.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

285.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

286.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

287.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

288.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who

1    purchased or leased new or certified previously owned vehicles would have paid less for their

2    vehicles or would not have purchased or leased them at all.

3            289.    The value of Plaintiffs' and Class Members' vehicles has diminished as a result of

4    Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the

5    Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made

6    any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what

7    otherwise would have been fair market value for the vehicles.

8            290.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an

9    amount to be proven at trial.

10           291.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with

11   intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the

12   representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent

13   permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages

14   in an amount sufficient to deter such conduct in the future, which amount is to be determined

15   according to proof.

16                                        **COUNT IV**

17                              **BREACH OF CONTRACT**
                                 **(Based on Georgia Law)**

18

19           292.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

20   herein.

21           293.    Plaintiff brings this Count on behalf of the Georgia Subclass.

22           294.    Volkswagen's misrepresentations and omissions alleged herein, including

23   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

24   defective design as alleged herein, caused Plaintiff and the other Georgia Subclass members to

25   make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

26   omissions, Plaintiff and the other Georgia Subclass members would not have purchased or leased

27   these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

28   they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

CLASS ACTION COMPLAINT                       - 66 -
000700-00  809975 V1

1    contain the CleanDiesel engine system and which were not marketed as including such a system.

2    Accordingly, Plaintiff and the other Georgia Subclass members overpaid for their Affected Vehicles

3    and did not receive the benefit of their bargain.

4           295.    Each and every sale or lease of an Affected Vehicle constitutes a contract between

5    Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

6    Plaintiff and the other Georgia Subclass members defective Affected Vehicles and by

7    misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

8    defective design, including information known to Volkswagen rendering each Affected Vehicle non

9    EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine

10   system.

11          296.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

12   the Georgia Subclass have been damaged in an amount to be proven at trial, which shall include, but

13   is not limited to, all compensatory damages, incidental and consequential damages, and other

14   damages allowed by law.

15   **H.     Claims Brought on Behalf of the Illinois Subclass**

16   **COUNT I**

17   **VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
     **DECEPTIVE BUSINESS PRACTICES ACT**
18   **(815 ILCS 505/1, *et seq.* and 720 ILCS 295/1A)**

19
20          297.    Plaintiff David Goodson ("Plaintiff," for purposes of all Illinois Subclass Counts)

21   incorporates by reference all preceding allegations as though fully set forth herein.

            298.    This claim is brought only on behalf of the Illinois Subclass.
22
            299.    Volkswagen is a "person" as that term is defined in 815 ILCS 505/1(c).
23
            300.    Plaintiff and the Illinois Subclass are "consumers" as that term is defined in 815
24
     ILCS 505/1(e).
25
            301.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA")
26
     prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment
27
     of any deception, fraud, false pretense, false promise, misrepresentation or the concealment,
28

suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

302.    Volkswagen participated in misleading, false, or deceptive acts that violated the Illinois CFA. By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Illinois CFA.

303.    In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

304.    Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

305.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

306.    By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the Illinois CFA.

307.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by

repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

308.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

309.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Illinois Subclass.

310.    Volkswagen knew or should have known that its conduct violated the Illinois CFA.

311.    As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

312.    Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

313.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In

1    light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth

2    significantly less than they otherwise would be.

3          314.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true

4    characteristics of the CleanDiesel engine system were material to Plaintiffs and the Illinois

5    Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is

6    worth more than an otherwise comparable vehicle made by a disreputable manufacturer of

7    environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying

8    them.

9          315.    Plaintiffs and the Illinois Subclass suffered ascertainable loss caused by

10    Volkswagen's misrepresentations and its concealment of and failure to disclose material

11    information.

12          316.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain

13    from unfair and deceptive acts or practices under the Illinois CFA. All owners of Affected Vehicles

14    suffered ascertainable loss in the form of the diminished value of their vehicles as a result of

15    Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

16          317.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the

17    general public. Volkswagen's unlawful acts and practices complained of herein affect the public

18    interest.

19          318.    As a direct and proximate result of Volkswagen's violations of the Illinois CFA,

20    Plaintiffs and the Illinois Subclass have suffered injury-in-fact and/or actual damage.

21          319.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Subclass seek monetary

22    relief against Volkswagen in the amount of actual damages, as well as punitive damages because

23    Volkswagen acted with fraud and/or malice and/or was grossly negligent.

24          320.    Plaintiffs also seek an order enjoining Volkswagen's unfair and/or deceptive acts or

25    practices, punitive damages, and attorneys' fees, and any other just and proper relief available under

26    815 ILCS § 505/1 *et seq.*

27

28

## COUNT II

## FRAUD BY CONCEALMENT

321.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

322.    This claim is brought on behalf of the Illinois Subclass.

323.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

324.    Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

325.    Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

1  intentional manipulation of the system.  That's just a whole other level of not only lying to the

2  government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

3  they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

4  sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

5  into the environment."

6          326.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal

7  the details of its scheme to regulators or consumers, including Plaintiffs and Class members.

8  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers

9  and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

10 reputable manufacturer that complies with applicable law, including federal and state clean air law

11 and emissions regulations, and that its vehicles likewise comply with applicable law and

12 regulations.  Volkswagen's false representations were material to consumers, both because they

13 concerned the quality of the affected vehicles, including their compliance with applicable federal

14 and state law and regulations regarding clean air and emissions, and also because the representations

15 played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers,

16 including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

17 leasing were *clean* diesel cars, and they paid accordingly.

18         327.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

19 to the vehicles at issue because knowledge of the scheme and its details were known and/or

20 accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

21 implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

22 known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

23 to disclose because it made general affirmative representations about the qualities of its vehicles

24 with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

25 with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

26 of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

27 vehicles, its actual philosophy with respect to compliance with federal and state clean air law and

28 emissions regulations, and its actual practices with respect to the vehicles at issue.  Having

volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

328.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

329.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

330.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

331.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of

thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

332.    The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

333.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

334.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF CONTRACT**
**(Based on Illinois Law)**

335.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

336.    Plaintiff brings this Count on behalf of the Illinois Subclass.

337.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Illinois Subclass members to make

1   their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

2   omissions, Plaintiff and the other Illinois Subclass members would not have purchased or leased

3   these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

4   they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

5   contain the CleanDiesel engine system and which were not marketed as including such a system.

6   Accordingly, Plaintiff and the other Illinois Subclass members overpaid for their Affected Vehicles

7   and did not receive the benefit of their bargain.

8         338.   Each and every sale or lease of an Affected Vehicle constitutes a contract between

9   Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

10   Plaintiff and the other Illinois Subclass members defective Affected Vehicles and by

11   misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or

12   defective design, including information known to Volkswagen rendering each Affected Vehicle non

13   EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine

14   system.

15         339.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

16   the Illinois Subclass have been damaged in an amount to be proven at trial, which shall include, but

17   is not limited to, all compensatory damages, incidental and consequential damages, and other

18   damages allowed by law.

19   **I.**     **Claims Brought on Behalf of the Kentucky Subclass**

20   **COUNT I**

21   **VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
(KY. REV. STAT. § 367.110, *et seq.*)

22

23         340.   Plaintiff Emily Fisher ("Plaintiff," for purposes of all Kentucky Subclass Counts)

24   incorporates by reference all preceding allegations as though fully set forth herein.

25         341.   This claim is brought only on behalf of the Kentucky Subclass.

26         342.   Volkswagen, Plaintiffs, and the Kentucky Subclass are "persons" within the meaning

27   of the KY. REV. STAT. § 367.110(1).

28

343.     Volkswagen engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

344.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …." KY. REV. STAT. § 367.170(1).  Volkswagen both participated in misleading, false, or deceptive acts that violated the Kentucky CPA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Kentucky CPA.

345.     In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

346.     Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

347.     Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

348.     By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Kentucky CPA.

349.     In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel

engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

350.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

351.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Kentucky Subclass.

352.    Volkswagen knew or should have known that its conduct violated the Kentucky CPA.

353.    Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

354.    Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

      a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.    Intentionally concealed the foregoing from Plaintiffs; and/or

      c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

355.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative

1  publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine

2  system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In

3  light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth

4  significantly less than they otherwise would be.

5  356.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true

6  characteristics of the CleanDiesel engine system were material to Plaintiffs and the Kentucky

7  Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is

8  worth more than an otherwise comparable vehicle made by a disreputable manufacturer of

9  environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying

10  them.

11  357.   Plaintiffs and the Kentucky Subclass suffered ascertainable loss caused by

12  Volkswagen's misrepresentations and its concealment of and failure to disclose material

13  information.

14  358.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain

15  from unfair and deceptive acts or practices under the Kentucky CPA.  All owners of Affected

16  Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result

17  of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's

18  business

19  359.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the

20  general public.  Volkswagen's unlawful acts and practices complained of herein affect the public

21  interest.

22  360.   As a direct and proximate result of Volkswagen's violations of the Kentucky CPA,

23  Plaintiffs and the Kentucky Subclass have suffered injury-in-fact and/or actual damage.

24  361.   Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs and the Kentucky Subclass

25  seek to recover actual damages in an amount to be determined at trial; an order enjoining

26  Volkswagen's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and

27  any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

28

# COUNT II

## FRAUD BY CONCEALMENT

362.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

363.     This claim is brought on behalf of the Kentucky Subclass.

364.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

365.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

366.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the

government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

367.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

368.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

1    partial truth, but the entire truth.  These omitted and concealed facts were material because they

2    directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class

3    members.  Whether a manufacturer's products comply with federal and state clean air law and

4    emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

5    or non-compliance, are material concerns to a consumer, including with respect to the emissions

6    certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class

7    members that they were purchasing *clean* diesel vehicles, and certification testing appeared to

8    confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

9            369.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in

10   part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not

11   comply with federal and state laws governing clean air and emissions, which perception would hurt

12   the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class

13   members.

14           370.    On information and belief, Volkswagen has still not made full and adequate

15   disclosures, and continues to defraud Plaintiffs and Class members by concealing material

16   information regarding the emission qualities of its referenced vehicles and its emissions scheme.

17           371.    Plaintiffs and Class members were unaware of the omitted material facts referenced

18   herein, and they would not have acted as they did if they had known of the concealed and/or

19   suppressed facts, in that they would not have purchased purportedly "clean" diesel cars

20   manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting

21   vehicles, or would have taken other affirmative steps in light of the information concealed from

22   them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control

23   of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

24           372.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class

25   members have sustained damage because they own vehicles that are diminished in value as a result

26   of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and

27   Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of

28   thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by

1    Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's

2    emissions schemes with regard to the vehicles at issue, and the company's callous disregard for

3    compliance with applicable federal and state law and regulations, Plaintiffs and Class members who

4    purchased or leased new or certified previously owned vehicles would have paid less for their

5    vehicles or would not have purchased or leased them at all.

6         373.    The value of Plaintiffs' and Class Members' vehicles has diminished as a result of

7    Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the

8    Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made

9    any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what

10   otherwise would have been fair market value for the vehicles.

11        374.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an

12   amount to be proven at trial.

13        375.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with

14   intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the

15   representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent

16   permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages

17   in an amount sufficient to deter such conduct in the future, which amount is to be determined

18   according to proof.

19                              **COUNT III**

20                        **BREACH OF CONTRACT**
                          **(Based on Kentucky Law)**
21

22        376.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

23   herein.

24        377.    Plaintiff brings this Count on behalf of the Kentucky Subclass.

25        378.    Volkswagen's misrepresentations and omissions alleged herein, including

26   Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

27   defective design as alleged herein, caused Plaintiff and the other Kentucky Subclass members to

28   make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

CLASS ACTION COMPLAINT                        - 82 -

omissions, Plaintiff and the other Kentucky Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Kentucky Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

379.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Kentucky Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

380.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Kentucky Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## J.    Claims Brought on Behalf of the Maine Subclass

### COUNT I

### VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
(ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*)

381.    Plaintiff Kshanti Greene ("Plaintiff," for purposes of all Maine Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

382.    Plaintiff intends to assert a claim under the Maine Unfair Trade Practices Act ("Maine UTPA") which makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  ME. REV. STAT. ANN. TIT. 5 § 207. Plaintiffs will make a demand in satisfaction of ME. REV. STAT. ANN. TIT. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have

1   elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert

2   a claim under the Maine UTPA.

3   **COUNT II**

4   **FRAUD BY CONCEALMENT**

5   383.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

6   forth herein.

7   384.    This claim is brought on behalf of the Maine Subclass.

8   385.    Volkswagen intentionally concealed and suppressed material facts concerning the

9   quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the

10  very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean

11  Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle

12  emissions standards by installing software designed to conceal its vehicles' emissions of the

13  pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software

14  installed on the vehicles at issue was designed nefariously to kick-in during emissions certification

15  testing, such that the vehicles would show far lower emissions than when actually operating on the

16  road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of

17  deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in

18  noxious emissions from these vehicles at 40 times applicable standards.

19  386.    Plaintiffs and Class members reasonably relied upon Volkswagen's false

20  representations.  They had no way of knowing that Volkswagen's representations were false and

21  gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of

22  deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on

23  their own.

24  387.    Volkswagen concealed and suppressed material facts concerning what is evidently

25  the true culture of Volkswagen – one characterized by an emphasis on profits and sales above

26  compliance with federal and state clean air law, and emissions regulations that are meant to protect

27  the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

28  Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation

CLASS ACTION COMPLAINT                         - 84 -
000700-00  809975 V1

1    cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

2    intentional manipulation of the system.  That's just a whole other level of not only lying to the

3    government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

4    they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

5    sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

6    into the environment."

7            388.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal

8    the details of its scheme to regulators or consumers, including Plaintiffs and Class members.

9    Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers

10   and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

11   reputable manufacturer that complies with applicable law, including federal and state clean air law

12   and emissions regulations, and that its vehicles likewise comply with applicable law and

13   regulations.  Volkswagen's false representations were material to consumers, both because they

14   concerned the quality of the affected vehicles, including their compliance with applicable federal

15   and state law and regulations regarding clean air and emissions, and also because the representations

16   played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers,

17   including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

18   leasing were *clean* diesel cars, and they paid accordingly.

19           389.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

20   to the vehicles at issue because knowledge of the scheme and its details were known and/or

21   accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

22   implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

23   known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

24   to disclose because it made general affirmative representations about the qualities of its vehicles

25   with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

26   with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

27   of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

28   vehicles, its actual philosophy with respect to compliance with federal and state clean air law and

emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

390.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not, or could not, comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

391.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

392.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

393.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and

Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

394.   The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

395.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

396.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF CONTRACT**
**(Based on Maine Law)**

397.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

398.   Plaintiff brings this Count on behalf of the Maine Subclass.

399.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

1   defective design as alleged herein, caused Plaintiff and the other Maine Subclass members to make

2   their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and

3   omissions, Plaintiff and the other Maine Subclass members would not have purchased or leased

4   these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

5   they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

6   contain the CleanDiesel engine system and which were not marketed as including such a system.

7   Accordingly, Plaintiff and the other Maine Subclass members overpaid for their Affected Vehicles

8   and did not receive the benefit of their bargain.

9       400.    Each and every sale or lease of an Affected Vehicle constitutes a contract between

10   Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

11   Plaintiff and the other Maine Subclass members defective Affected Vehicles and by misrepresenting

12   or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective

13   design, including information known to Volkswagen rendering each Affected Vehicle non EPA-

14   compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

15       401.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and

16   the Maine Subclass have been damaged in an amount to be proven at trial, which shall include, but

17   is not limited to, all compensatory damages, incidental and consequential damages, and other

18   damages allowed by law.

19   **K.      Claims Brought on Behalf of the Massachusetts Subclass**

20                               **COUNT I**

21   **VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**
     **(MASS. GEN. LAWS CH. 93A)**

22

23       402.    Plaintiff John Halloran ("Plaintiff," for purposes of all Massachusetts Subclass

24   Counts) incorporates by reference all preceding allegations as though fully set forth herein.

25       403.    Plaintiff intends to assert a claim under the Massachusetts Consumer Protection Act

26   ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive

27   acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2(1).

28   Plaintiffs will make a demand in satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), and may amend

1   this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This

2   paragraph is included for purposes of notice only and is not intended to actually assert a claim under

3   the MCPA.

**COUNT II**

**BREACH OF CONTRACT
(BASED ON MASSACHUSETTS LAW)**

404.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

405.    Plaintiff brings this Count on behalf of the Massachusetts Subclass.

406.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Massachusetts Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Massachusetts Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Massachusetts Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

407.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Massachusetts Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

408.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Massachusetts Subclass have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
## (BASED ON MASSACHUSETTS LAW)

409.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

410.     Plaintiff brings this Count on behalf of the Massachusetts Subclass.

411.     Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

412.     Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

413.     Volkswagen knew these representations were false when made.

414.     The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

415.     Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

416.     The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

417.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

418.     Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

419.     As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

420.     Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**L.      Claims Brought on Behalf of the Minnesota Subclass**

**COUNT I**

**VIOLATION OF MINNESOTA PREVENTION
OF CONSUMER FRAUD ACT**

**(MINN. STAT. § 325F.68, *et seq.*)**

421.     Plaintiff Scott Moen ("Plaintiff," for purposes of all Minnesota Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

422.     This claim is brought only on behalf of the Minnesota Subclass.

423.    The Affected Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

424.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ." MINN. STAT. § 325F.69(1).  Volkswagen participated in misleading, false, or deceptive acts that violated the Minnesota CFA.  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the Minnesota CFA.

425.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

426.    In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

427.    Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

428.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

429.    By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its

1    vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of

2    the Minnesota CFA.

3        430.   In the course of Volkswagen's business, it willfully failed to disclose and actively

4    concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel

5    engine system and serious defects discussed above.  Volkswagen compounded the deception by

6    repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient,

7    and of high quality, and by claiming to be a reputable manufacturer that valued safety,

8    environmental cleanliness and efficiency, and stood behind its vehicles once they were on the road.

9        431.   Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact,

10   deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the

11   CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of

12   environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

13       432.   Volkswagen intentionally and knowingly misrepresented material facts regarding the

14   Affected Vehicles with an intent to mislead Plaintiffs and the Minnesota Subclass.

15       433.   Volkswagen knew or should have known that its conduct violated the Minnesota

16   CFA.

17       434.   As alleged above, Volkswagen made material statements about the safety,

18   cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands

19   that were either false or misleading.

20       435.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency

21   and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity

22   at Volkswagen, because Volkswagen:

23           a.    Possessed exclusive knowledge that it valued profits over
                  environmental cleanliness, efficiency, and lawfulness, and that
24                it was manufacturing, selling and distributing vehicles
                  throughout the United States that did not comply with EPA
25                regulations;

26           b.    Intentionally concealed the foregoing from Plaintiffs; and/or

27           c.    Made incomplete representations about the safety, cleanliness,
                  efficiency and reliability of the Affected Vehicles generally,
28                and the use of the "defeat device" and true nature of the

CleanDiesel engine system in particular, while purposefully
withholding material facts from Plaintiffs that contradicted
these representations.

436.    Because Volkswagen fraudulently concealed the "defeat device" and the true

cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative

publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine

system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In

light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth

significantly less than they otherwise would be.

437.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true

characteristics of the CleanDiesel engine system were material to Plaintiffs and the Minnesota

Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is

worth more than an otherwise comparable vehicle made by a disreputable and dishonest

manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make

environmentally friendly vehicles.

438.    Plaintiffs and the Minnesota Subclass suffered ascertainable loss caused by

Volkswagen's misrepresentations and its concealment of and failure to disclose material

information.

439.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain

from unfair and deceptive acts or practices under the Minnesota CFA.  All owners of Affected

Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result

of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's

business.

440.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the

general public.  Volkswagen's unlawful acts and practices complained of herein affect the public

interest.

441.    As a direct and proximate result of Volkswagen's violations of the Minnesota CFA,

Plaintiffs and the Minnesota Subclass have suffered injury-in-fact and/or actual damage.

442.     Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

443.     Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Volkswagen's acts show deliberate disregard for the rights or safety of others.

**COUNT II**

**VIOLATION OF MINNESOTA UNIFORM
DECEPTIVE TRADE PRACTICES ACT**

**(MINN. STAT. § 325D.43-48, *et seq.*)**

444.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

445.     This claim is brought only on behalf of the Minnesota Subclass.

446.     The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. § 325D.44.  In the course of the Volkswagen's business, it installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations and engaged in deceptive practices by representing that Affected Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that Affected Vehicles are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising Affected Vehicles with intent not to sell them as advertised.  Volkswagen participated in misleading, false, or deceptive acts that violated the Minnesota DTPA.  By fraudulently installing the "defeat device" to

1    make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen

2    engaged in deceptive business practices prohibited by the Minnesota DTPA.

3            447.    Volkswagen's actions as set forth above occurred in the conduct of trade or

4    commerce.

5            448.    In the course of its business, Volkswagen installed the "defeat device" and concealed

6    that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in

7    activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade

8    practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

9    concealment, suppression or omission of any material fact with intent that others rely upon such

10   concealment, suppression or omission, in connection with the sale of Affected Vehicles.

11           449.    Volkswagen has known of its use of the "defeat device" and the true nature of its

12   CleanDiesel engine system for at least six years, but concealed all of that information until recently.

13           450.    Volkswagen was also aware that it valued profits over environmental cleanliness,

14   efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles

15   throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this

16   information as well.

17           451.    By failing to disclose and by actively concealing the "defeat device" and the true

18   cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe,

19   reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable

20   manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its

21   vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of

22   the Minnesota DTPA.

23           452.    In the course of Volkswagen's business, it willfully failed to disclose and actively

24   concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel

25   engine system and serious defects discussed above.  Volkswagen compounded the deception by

26   repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient,

27   and of high quality, and by claiming to be a reputable manufacturer that valued safety,

28   environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

453.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

454.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Minnesota Subclass.

455.     Volkswagen knew or should have known that its conduct violated the Minnesota DTPA.

456.     As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.

457.     Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

458.     Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

459.     Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Minnesota Subclass.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

460.     Plaintiffs and the Minnesota Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its failure to disclose material information.  Had they been aware of the true characteristics of the CleanDiesel engine system, and the company's callous disregard for environmental laws and regulations, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

461.     Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

462.     As a direct and proximate result of Volkswagen's violations of the Minnesota DTPA, Plaintiffs and the Minnesota Subclass have suffered injury-in-fact and/or actual damage.

463.     Pursuant to MINN. STAT. § 8.31(3a) and 325D.45, Plaintiffs and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

464.     Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) give the clear and convincing evidence that Volkswagen's acts show deliberate disregard for the rights or safety of others.

### COUNT III

### FRAUD BY CONCEALMENT

465.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

466.   This claim is brought on behalf of the Minnesota Subclass.

467.   Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

468.   Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

469.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

470.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

471.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

472.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

473.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

474.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

475.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who

purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

476.     The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

477.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

478.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV
BREACH OF CONTRACT
(BASED ON MINNESOTA LAW)**

479.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

480.     Plaintiff brings this Count on behalf of the Minnesota Subclass.

481.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Minnesota Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Minnesota Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not

contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Minnesota Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

482.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Minnesota Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

483.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Minnesota Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**M.      Claims Brought on Behalf of the Missouri Subclass**

**COUNT I**

**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**

**(MO. REV. STAT. § 407.010, *et seq.*)**

484.    Plaintiff Grant Gall ("Plaintiff," for purposes of all Missouri Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

485.    This claim is brought only on behalf of the Missouri Subclass.

486.    Volkswagen, Plaintiffs and the Missouri Subclass are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

487.    Volkswagen engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

488.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation,

unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

489.    In the course of its business, Volkswagen environmental laws and regulations and, omitted, suppressed, and concealed its use of the "defeat device" as described herein.  By failing to disclose these defects or facts about the defects described herein known to it or that were available to Volkswagen upon reasonable inquiry, Volkswagen deprived consumers of all material facts about the safety and functionality of their vehicle.  By failing to release material facts about the defect, Volkswagen curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers.  15 MO. CODE OF SERV. REG. § 60-9.110.  Moreover, Volkswagen has otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

490.    Volkswagen has known of its use of the "defeat device" and the true characteristics of its CleanDiesel engine system, but suppressed and/or concealed all of that information until recently.

491.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen omitted, suppressed, and/or concealed this information as well.

492.    By failing to disclose and by actively concealing, suppressing, or omitting the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and/or deceptive business practices and concealed, suppressed, and/or omitted material facts from consumers in connection with the purchase of their vehicles – all in violation of the Missouri MPA.

493.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed, suppressed, and omitted the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

494.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

495.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Missouri Subclass, including without limitation by failing to disclose the "defeat device" in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Volkswagen about the safety, efficiency, cleanliness or reliability of its vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 MO. CODE OF SERV. REG. § 60-9.090.

496.    Because Volkswagen knew or believed that its statements regarding cleanliness, efficiency and reliability of its vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Volkswagen engaged in fraudulent misrepresentations pursuant to 15 MO. CODE OF SERV. REG. 60-9.100.

497.    Volkswagen's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers whose vehicles were operating illegally and under circumstances that rendered them unsafe.  Such acts are unfair practices in violation of 15 MO. CODE OF SERV. REG. 60-8.020.

498.    Volkswagen knew or should have known that its conduct violated the Missouri MPA.

499.    As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false, misleading, and/or half-truths in violation of the Missouri MPA.

500.    Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.    Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.    Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

501.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, and committed these other unlawful acts in violation of the Missouri MPA, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

502.    Volkswagen's misleading statements, deception, and/or concealment, suppression, or omission of the "defeat device" and true nature of the CleanDiesel engine system were material to Plaintiffs and the Missouri Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a

disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

503.    Plaintiffs and the Missouri Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

504.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Missouri MPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

505.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

506.    As a direct and proximate result of Volkswagen's violations of the Missouri MPA, Plaintiffs and the Missouri Subclass have suffered injury-in-fact and/or actual damage.

507.    Volkswagen is liable to Plaintiffs and the Missouri Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Volkswagen's unfair and deceptive practices, and any other just and proper relief under MO. REV. STAT. § 407.025.

## COUNT II

## FRAUD BY CONCEALMENT

508.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

509.    This claim is brought on behalf of the Missouri Subclass.

510.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean

Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was nefariously designed to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

511.    Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

512.    Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

513.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

514.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

515.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

516.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

517.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

518.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

519.     The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made

any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

520.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

521.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON MISSOURI LAW)**

522.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

523.    Plaintiff brings this Count on behalf of the Missouri Subclass.

524.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Missouri Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Missouri Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Missouri Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

525.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

Plaintiff and the other Missouri Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

526. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Missouri Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**N.      Claims Brought on Behalf of the Nevada Subclass**

**COUNT I**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(NEV. REV. STAT. § 598.0903, *et seq.*)**

527. Plaintiff Anthony DeMartino ("Plaintiff," for purposes of all Nevada Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

528. This claim is brought only on behalf of the Nevada Subclass.

529. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, *et seq.* prohibits deceptive trade practices. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

530.     Volkswagen engaged in deceptive trade practices that violated the Nevada DTPA, including:  knowingly representing that Affected Vehicles have uses and benefits which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

531.     Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

532.     In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

533.     Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

534.     Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

535.     By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Nevada DTPA.

536.     In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

537.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

538.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Nevada Subclass.

539.     Volkswagen knew or should have known that its conduct violated the Nevada DTPA.

540.     As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

541.     Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

      a.     Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.     Intentionally concealed the foregoing from Plaintiffs; and/or

      c.     Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

542.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

543.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Nevada Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

544.    Plaintiffs and the Nevada Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

545.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Nevada DTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

546.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

547.    As a direct and proximate result of Volkswagen's violations of the Nevada DTPA, Plaintiffs and the Nevada Subclass have suffered injury-in-fact and/or actual damage.

548.    Accordingly, Plaintiffs and the Nevada Subclass seek their actual damages, punitive damages, an order enjoining Volkswagen's deceptive acts or practices, costs of Court, attorney's

fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  NEV. REV. STAT. § 41.600.

## COUNT II

## FRAUD BY CONCEALMENT

549.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

550.     This claim is brought on behalf of the Nevada Subclass.

551.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

552.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

553.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

554.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

555.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

556.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

557.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

558.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

559.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result

of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

560.    The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

561.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

562.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF CONTRACT
## (BASED ON NEVADA LAW)

563.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

564.    Plaintiff brings this Count on behalf of the Nevada Subclass.

565. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Nevada Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Nevada Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Nevada Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

566. Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Nevada Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

567. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Nevada Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**O.      Claims on Behalf of the New Hampshire Subclass**

**COUNT I**

**VIOLATION OF N.H. CONSUMER PROTECTION ACT**

**(N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)**

568. Plaintiff Petar Ramadanovic ("Plaintiff," for purposes of all New Hampshire Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

569. This claim is brought only on behalf of the New Hampshire Subclass.

570. Plaintiffs, the New Hampshire Subclass, and Volkswagen are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. REV. STAT. § 358-A:1.

571. Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. § 358-A:1.

572. The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. § 358-A:2.

573. Volkswagen participated in unfair or deceptive acts or practices that violated the New Hampshire CPA as described above and below. By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive business practices prohibited by the CPA, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

574. In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

575.    Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

576.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

577.    By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in violation of the New Hampshire CPA.

578.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

579.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

580.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the New Hampshire Subclass.

581.    Volkswagen knew or should have known that its conduct violated the New Hampshire CPA.

582.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

583.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

584.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

585.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the New Hampshire Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

586.     Plaintiffs and the New Hampshire Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

587.     Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the New Hampshire CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

588.     Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

589.     As a direct and proximate result of Volkswagen's violations of the New Hampshire CPA, Plaintiffs and the New Hampshire Subclass have suffered injury-in-fact and/or actual damage.

590.     Because Volkswagen's willful conduct caused injury to New Hampshire Subclass members' property through violations of the New Hampshire CPA, the New Hampshire Subclass seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Volkswagen's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. REV. STAT. § 358-A:10.

## COUNT II

## FRAUD BY CONCEALMENT

591.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

592.     This claim is brought on behalf of the New Hampshire Subclass.

593.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle

emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

594.    Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

595.    Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

596.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air laws

1    and emissions regulations, and that its vehicles likewise comply with applicable laws and

2    regulations.  Volkswagen's false representations were material to consumers, both because they

3    concerned the quality of the affected vehicles, including their compliance with applicable federal

4    and state laws and regulations regarding clean air and emissions, and also because the

5    representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its

6    customers, including Plaintiffs and Class members, highly valued that the vehicles they were

7    purchasing or leasing were *clean* diesel cars, and they paid accordingly.

8         597.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

9    to the vehicles at issue because knowledge of the scheme and its details were known and/or

10   accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

11   implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

12   known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

13   to disclose because it made general affirmative representations about the qualities of its vehicles

14   with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

15   with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

16   of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

17   vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and

18   emissions regulations, and its actual practices with respect to the vehicles at issue.  Having

19   volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

20   partial truth, but the entire truth.  These omitted and concealed facts were material because they

21   directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class

22   members.  Whether a manufacturer's products comply with federal and state clean air laws and

23   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

24   or non-compliance, are material concerns to a consumer, including with respect to the emissions

25   certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class

26   members that they were purchasing *clean* diesel vehicles, and certification testing appeared to

27   confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

28

598.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

599.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

600.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

601.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

602.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made

any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

603.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

604.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON NEW HAMPSHIRE LAW)**

605.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

606.   Plaintiff brings this Count on behalf of the New Hampshire Subclass.

607.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other New Hampshire Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other New Hampshire Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel Engine System and which were not marketed as including such a system.  Accordingly, Plaintiff and the other New Hampshire Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

608.   Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing

Plaintiff and the other New Hampshire Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

609. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the New Hampshire Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**P.      Claims Brought on Behalf of the New York Subclass**

**COUNT I**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

610. Plaintiff Christopher Monroe ("Plaintiffs," for purposes of all New York Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

611. Plaintiffs bring this Count on behalf of the New York Subclass.

612. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

613. In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel engine system was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

614. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

615.    Because Volkswagen's deception takes place in the context of automobile safety, its deception affects the public interest.  Further, Volkswagen's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

616.    Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

617.    Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

**COUNT II**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. GEN. BUS. LAW § 350)**

618.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

619.    Plaintiffs bring this Count on behalf of the New York Subclass.

620.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…."  N.Y. Gen. Bus. Law § 350-a.

621.    Volkswagen caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

622.    Volkswagen has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding that the CleanDiesel engine system was non-EPA compliant, and the use of

the "defeat device" in Affected Vehicles as described above, as well as the inherently defective nature of the CleanDiesel engine system as designed and sold by Volkswagen, were material and likely to deceive a reasonable consumer.

623.    Plaintiffs and the other Class members have suffered injury, including the loss of money or property, as a result of Volkswagen's false advertising.  In purchasing or leasing their Affected Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, quality, functionality, and reliability of the Affected Vehicles.  Volkswagen's representations turned out to be untrue because the CleanDiesel engine system installed in Affected Vehicles did not comply with EPA regulations.  Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

624.    Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of the bargain for their Affected Vehicles, which have also suffered diminution in value.

625.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful and/or deceptive practices.  Plaintiffs and the other Class members are also entitled to recover their actual damages or $500, whichever is greater.  Because Volkswagen acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON NEW YORK LAW)**

626.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

627.    Plaintiff brings this Count on behalf of the New York Subclass.

628.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or

defective design as alleged herein, caused Plaintiff and the other New York Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other New York Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other New York Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

629.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other New York Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

630.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the New York Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IV
FRAUDULENT CONCEALMENT
(BASED ON NEW YORK LAW)**

631.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

632.    Plaintiffs bring this Count on behalf of the New York Subclass.

633.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied

1    Plaintiffs and the other Class members information that is highly relevant to their purchasing

2    decision.

3           634.    Volkswagen further affirmatively misrepresented to Plaintiffs in advertising and

4    other forms of communication, including standard and uniform material provided with each car, that

5    the Affected Vehicles it was selling were new, had no significant defects, complied with EPA

6    regulations and would perform and operate properly when driven in normal usage.

7           635.    Volkswagen knew these representations were false when made.

8           636.    The Affected Vehicles purchased or leased by Plaintiffs and the other Class members

9    were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles

10   contained faulty and defective CleanDiesel engine system, as alleged herein.

11          637.    Volkswagen had a duty to disclose that these Affected Vehicles were defective,

12   unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected

13   Vehicles would be rendered inoperative due to the "defeat device" installed in the defective

14   CleanDiesel engine system, because Plaintiffs and the other Class members relied on Volkswagen's

15   material representations that the Affected Vehicles they were purchasing were safe, environmentally

16   clean, efficient and free from defects.

17          638.    The aforementioned concealment was material because if it had been disclosed

18   Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or

19   would not have bought or leased those Vehicles at the prices they paid.

20          639.    The aforementioned representations were material because they were facts that

21   would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen

22   knew or recklessly disregarded that its representations were false because it knew that it had to use

23   the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.

24   Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

25          640.    Plaintiffs and the other Class members relied on Volkswagen's reputation – along

26   with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine

27   system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable,

28

and complied with environmental regulations – in purchasing or leasing Volkswagen's Affected Vehicles.

641.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

642.    Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.  Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**Q.    Claims Brought on Behalf of the North Carolina Subclass**

**COUNT I**
**VIOLATIONS OF THE NORTH CAROLINA UNFAIR**
**AND DECEPTIVE TRADE PRACTICES ACT**
**(N.C. GEN. STAT. §§ 75-1.1, *et seq.*)**

643.    Plaintiff Melissa Bracken ("Plaintiff," for purposes of all North Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

644.    Plaintiff brings this Count on behalf of the North Carolina Subclass.

645.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. Gen. Stat. § 75-16.

646.    Volkswagen's acts and practices complained of herein were performed in the course of Volkswagen's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

647.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unlawful

trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

648.   Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members.

649.   Volkswagen acted with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the other Class members to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

650.   Plaintiff and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

651.   Plaintiff, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

**COUNT II**
**BREACH OF CONTRACT**
**(BASED ON NORTH CAROLINA LAW)**

652.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

653.   Plaintiff brings this Count on behalf of the North Carolina Class.

654.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other North Carolina Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other North Carolina Class members would not have purchased or

leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other North Carolina Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

655.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other North Carolina Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

656.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the North Carolina Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
## (BASED ON NORTH CAROLINA LAW)

657.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

658.    Plaintiff brings this Count on behalf of the North Carolina Class.

659.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

660.    Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the

1    Affected Vehicles it was selling were new, had no significant defects, complied with EPA

2    regulations and would perform and operate properly when driven in normal usage.

3          661.    Volkswagen knew these representations were false when made.

4          662.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members

5    were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles

6    contained faulty and defective CleanDiesel engine system, as alleged herein.

7          663.    Volkswagen had a duty to disclose that these Affected Vehicles were defective,

8    unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected

9    Vehicles would be rendered inoperative due to the "defeat device" installed in the defective

10   CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's

11   material representations that the Affected Vehicles they were purchasing were safe, environmentally

12   clean, efficient and free from defects.

13         664.    The aforementioned concealment was material because if it had been disclosed

14   Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or

15   would not have bought or leased those Vehicles at the prices they paid.

16         665.    The aforementioned representations were material because they were facts that

17   would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen

18   knew or recklessly disregarded that its representations were false because it knew that it had to use

19   the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.

20   Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

21         666.    Plaintiff and the other Class members relied on Volkswagen's reputation – along

22   with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine

23   system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable,

24   and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

25         667.    As a result of their reliance, Plaintiff and the other Class members have been injured

26   in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and

27   overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

28

668.     Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**R.      Claims Brought on Behalf of the Ohio Subclass**

### COUNT I
### VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE §§ 1345.01, *et seq.*)

669.     Plaintiff Rezeda Dozier ("Plaintiff," for purposes of all Ohio Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

670.     Plaintiff brings this Count on behalf of the Ohio Subclass.

671.     Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").  Volkswagen is a "supplier" as defined by the OCSPA.  Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the OCSPA.

672.     By failing to disclose and actively concealing that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device" in the Affected Vehicles, Volkswagen engaged in deceptive business practices prohibited by the OCSPA, including (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

673.     As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel engine system that were either false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

674.     Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were defectively designed or manufactured, did not comply with EPA regulations and the Clean Air Act,

and were not suitable for their intended use.  Volkswagen nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

675.    Volkswagen owed Plaintiff a duty to disclose the defective nature of the CleanDiesel engine system in the Affected Vehicles, because Volkswagen:

    i)    Possessed exclusive knowledge of the defects rendering the Affected Vehicles more unreliable than similar vehicles;

    ii)    Intentionally concealed the defects associated with MyVolkswagen Touch through its deceptive marketing campaign and recall program that it designed to hide the defects in the CleanDiesel engine system; and/or

    iii)    Made incomplete representations about the characteristics and performance of the CleanDiesel engine system generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

676.    Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the CleanDiesel engine system.

677.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Volkswagen in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA.  These cases include, but are not limited to, the following:

    a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

    c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

    g.    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h.    *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i.    *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j.    *Khouri v. Don Lewis* (OPIF #100001995);

k.    *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l.    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m.    *Brown v. Spears* (OPIF #10000403).

678.    As a result of its violations of the OCSPA, as detailed above, Volkswagen caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.  Plaintiff currently owns or leases, or within the class period has owned or leased, an Affected Vehicle that is defective. Defects associated with the CleanDiesel engine system have caused the value of Affected Vehicles to decrease.

679.    Plaintiff and the Class sustained damages as a result of Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

680.    Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT II
## BREACH OF CONTRACT
## (BASED ON OHIO LAW)

681.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

682.    Plaintiff brings this Count on behalf of the Ohio Subclass.

683.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Ohio Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Ohio Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain

the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Ohio Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

684.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Ohio Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

685.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Ohio Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
### FRAUDULENT CONCEALMENT
### (BASED ON OHIO LAW)

686.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

687.     Plaintiff brings this Count on behalf of the Ohio Subclass.

688.     Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members' information that is highly relevant to their purchasing decision.

689.     Volkswagen further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

690.     Volkswagen knew these representations were false when made.

691.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained the faulty and defective CleanDiesel engine system, as alleged herein.

692.    Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiff and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

693.    The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

694.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

695.    Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

696.    As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

697.    Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**S.      Claims Brought on Behalf of the Oregon Subclass**

**COUNT I**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

**(OR. REV. STAT. §§ 646.605, *et seq.*)**

698.     Plaintiff Jon Dull ("Plaintiff," for purposes of all Oregon Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

699.     This claim is brought only on behalf of the Oregon Subclass.

700.     Volkswagen is a person within the meaning of OR. REV. STAT. § 646.605(4).

701.     The Affected Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

702.     The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following:  "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; (i) Advertis[ing] … goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce."  OR. REV. STAT. § 646.608(1).

703.     Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in other unfair or deceptive acts.

704.     Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

705.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

706.    Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

707.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

708.    By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Oregon UTPA.

709.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

710.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

711.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Oregon Subclass.

712.    Volkswagen knew or should have known that its conduct violated the Oregon UTPA.

713.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles that were either false or misleading.

714.   Volkswagen owed Plaintiff a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles, and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

        a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

        b.   Intentionally concealed the foregoing from Plaintiffs; and/or

        c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

715.   Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

716.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiff and the Oregon Subclass. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

717.   Plaintiff and the Oregon Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

718.     Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Oregon UTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

719.     Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

720.     As a direct and proximate result of Volkswagen's violations of the Oregon UTPA, Plaintiff and the Oregon Subclass have suffered injury-in-fact and/or actual damage.

721.     Plaintiff and the Oregon Subclass are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiff and the Oregon Subclass are also entitled to punitive damages because Volkswagen engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## COUNT II
## FRAUD BY CONCEALMENT

722.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

723.     This claim is brought on behalf of the Oregon Subclass.

724.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the

1    road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of

2    deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in

3    noxious emissions from these vehicles at 40 times applicable standards.

4         725.    Plaintiffs and Class members reasonably relied upon Volkswagen's false

5    representations.  They had no way of knowing that Volkswagen's representations were false and

6    gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of

7    deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on

8    their own.

9         726.    Volkswagen concealed and suppressed material facts concerning what is evidently

10   the true culture of Volkswagen—one characterized by an emphasis on profits and sales above

11   compliance with federal and state clean air law, and emissions regulations that are meant to protect

12   the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

13   Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation

14   cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

15   intentional manipulation of the system.  That's just a whole other level of not only lying to the

16   government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

17   they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

18   sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

19   into the environment."

20        727.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal

21   the details of its scheme to regulators or consumers, including Plaintiffs and Class members.

22   Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers

23   and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

24   reputable manufacturer that complies with applicable law, including federal and state clean air laws

25   and emissions regulations, and that its vehicles likewise comply with applicable laws and

26   regulations.  Volkswagen's false representations were material to consumers, both because they

27   concerned the quality of the affected vehicles, including their compliance with applicable federal

28   and state laws and regulations regarding clean air and emissions, and also because the

1   representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its

2   customers, including Plaintiffs and Class members, highly valued that the vehicles they were

3   purchasing or leasing were *clean* diesel cars, and they paid accordingly.

4          728.   Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

5   to the vehicles at issue because knowledge of the scheme and its details were known and/or

6   accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

7   implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

8   known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

9   to disclose because it made general affirmative representations about the qualities of its vehicles

10  with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

11  with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

12  of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

13  vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and

14  emissions regulations, and its actual practices with respect to the vehicles at issue.  Having

15  volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

16  partial truth, but the entire truth.  These omitted and concealed facts were material because they

17  directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class

18  members.  Whether a manufacturer's products comply with federal and state clean air laws and

19  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

20  or non-compliance, are material concerns to a consumer, including with respect to the emissions

21  certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class

22  members that they were purchasing *clean* diesel vehicles, and certification testing appeared to

23  confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

24         729.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in

25  part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not

26  comply with federal and state laws governing clean air and emissions, which perception would hurt

27  the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class

28  members.

730.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

731.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

732.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state laws and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

733.    The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

734.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

735.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON OREGON LAW)**

736.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

737.     Plaintiff brings this Count on behalf of the Oregon Subclass.

738.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Oregon Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Oregon Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Oregon Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

739.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Oregon Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen, rendering each Affected Vehicle

non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

740.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Oregon Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**T.      Claims Brought on Behalf of the Pennsylvania Subclass**

**COUNT I**

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(73 P.S. § 201-1, *et seq.*)**

741.     Plaintiff Melissa Fedorczyk ("Plaintiff," for purposes of all Pennsylvania Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

742.     This claim is brought only on behalf of the Pennsylvania Subclass.

743.     Plaintiffs purchased or leased their Affected Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

744.     All of the acts complained of herein were perpetrated by Volkswagen in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

745.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, ….  Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

746.     Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not;

1   advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in any

2   other fraudulent or deceptive conduct which creates a likelihood of confusion or of

3   misunderstanding.

4          747.    In the course of its business, Volkswagen installed the "defeat device" and concealed

5   that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in

6   activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade

7   practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

8   concealment, suppression or omission of any material fact with intent that others rely upon such

9   concealment, suppression or omission, in connection with the sale of Affected Vehicles.

10         748.    Volkswagen has known of its use of the "defeat device" and the true nature of its

11  CleanDiesel engine system for at least six years, but concealed all of that information until recently.

12         749.    Volkswagen was also aware that it valued profits over environmental cleanliness,

13  efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles

14  throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this

15  information as well.

16         750.    By failing to disclose and by actively concealing the "defeat device" and the true

17  cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe,

18  reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable

19  manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its

20  vehicles after they were sold, Volkswagen engaged in unfair and deceptive business practices in

21  violation of the Pennsylvania CPL.

22         751.    In the course of Volkswagen's business, it willfully failed to disclose and actively

23  concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel

24  engine system and serious defects discussed above.  Volkswagen compounded the deception by

25  repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient,

26  and of high quality, and by claiming to be a reputable manufacturer that valued safety,

27  environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

28

752.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

753.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Pennsylvania Subclass.

754.     Volkswagen knew or should have known that its conduct violated the Pennsylvania CPL.

755.     As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

756.     Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

       a.     Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

       b.     Intentionally concealed the foregoing from Plaintiffs; and/or

       c.     Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

757.     Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

758.     Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Pennsylvania Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

759.     Plaintiffs and the Pennsylvania Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

760.     Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Pennsylvania CPL.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

761.     Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

762.     As a direct and proximate result of Volkswagen's violations of the Pennsylvania CPL, Plaintiffs and the Pennsylvania Subclass have suffered injury-in-fact and/or actual damage.

763.     Volkswagen is liable to Plaintiffs and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Subclass are also entitled to an award of punitive damages given that Volkswagen's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

## FRAUD BY CONCEALMENT

764. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

765. This claim is brought on behalf of the Pennsylvania Subclass.

766. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

767. Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

768. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

1    intentional manipulation of the system.  That's just a whole other level of not only lying to the

2    government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

3    they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

4    sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

5    into the environment."

6           769.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal

7    the details of its scheme to regulators or consumers, including Plaintiffs and Class members.

8    Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers

9    and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

10   reputable manufacturer that complies with applicable law, including federal and state clean air law

11   and emissions regulations, and that its vehicles likewise comply with applicable law and

12   regulations.  Volkswagen's false representations were material to consumers, both because they

13   concerned the quality of the affected vehicles, including their compliance with applicable federal

14   and state law and regulations regarding clean air and emissions, and also because the representations

15   played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers,

16   including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

17   leasing were *clean* diesel cars, and they paid accordingly.

18          770.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

19   to the vehicles at issue because knowledge of the scheme and its details were known and/or

20   accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

21   implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

22   known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

23   to disclose because it made general affirmative representations about the qualities of its vehicles

24   with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

25   with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

26   of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

27   vehicles, its actual philosophy with respect to compliance with federal and state clean air law and

28   emissions regulations, and its actual practices with respect to the vehicles at issue.  Having

CLASS ACTION COMPLAINT                        - 156 -
000700-00  809975 V1

volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

771.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

772.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

773.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

774.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of

thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

775.    The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

776.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

777.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF CONTRACT**
**(BASED ON PENNSYLVANIA LAW)**

778.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

779.    Plaintiff brings this Count on behalf of the Pennsylvania Subclass.

780.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Pennsylvania Subclass members to

make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Pennsylvania Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Pennsylvania Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

781.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Pennsylvania Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

782.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Pennsylvania Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**U.    Claims Brought on Behalf of the Texas Subclass**

**COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, _et seq._)**

783.    Plaintiff David Antellocy ("Plaintiff," for purposes of all Texas Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

784.    Plaintiff intends to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46.  Plaintiffs will make a demand in satisfaction of TEX. BUS. & COM. CODE § 17.45(2), and may amend this Complaint to

assert claims under the TDTPA once the required 60 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

**COUNT II**
**BREACH OF CONTRACT**
**(BASED ON TEXAS LAW)**

785.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

786.    Plaintiff bring this Count on behalf of the Texas Subclass.

787.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiffs and the other Texas Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Texas Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Texas Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

788.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Texas Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

789.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Texas Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUD BY CONCEALMENT

790.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

791.    This claim is brought on behalf of the Texas Subclass.

792.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

793.    Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

794.    Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the

government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

795.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

796.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the

partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

797.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

798.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

799.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

800.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by

Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

801. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

802. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

803. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**V.      Claims Brought on Behalf of the Washington Subclass**

**COUNT I**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**

**(Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*)**

804. Plaintiff Joshua Campbell ("Plaintiff," for purposes of all Washington Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

805. Plaintiff brings this Count on behalf of the Washington Subclass.

806. The conduct of Volkswagen as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Volkswagen's manufacture and sale of vehicles with "defeat

1    devices" and non-EPA compliant CleanDiesel engine systems, which Volkswagen failed to

2    adequately investigate, disclose and remedy. Further, Volkswagen knew about these defects prior to

3    the sale of the Affected Vehicles but did not disclose the existence of these defects to Plaintiff and

4    the Washington Subclass members.  Volkswagen also made misrepresentations and omissions

5    regarding the safety, cleanliness, efficiency and reliability of the Affected Vehicles.

6        807.    Volkswagen's actions as set forth above occurred in the conduct of trade or

7    commerce.

8        808.    Volkswagen's actions constituted a generalized course of deception that impacts the

9    public interest because Plaintiff and the Washington Subclass members were injured in exactly the

10    same way as millions of others purchasing and/or leasing Volkswagen/Audi vehicles and that the

11    failure to follow the practices pertaining to motor vehicle warranties in Wash. Rev. Code § 19.18 is

12    recognized by statute as matters vitally affecting the public interest.  All of the wrongful conduct

13    alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business and has

14    the potential for repetition.

15        809.    Volkswagen's actions as set forth above induced Plaintiff and the Washington

16    Subclass members to purchase their Affected Vehicles from Volkswagen and/or pay a higher price

17    for their Affected Vehicles than they otherwise would have.

18        810.    Plaintiff and the Washington Subclass members were injured as a result of

19    Volkswagen's conduct.  Due to Volkswagen's deceptive or unfair conduct, Plaintiff and the

20    Washington Subclass members overpaid for their Affected Vehicles and did not receive the benefit

21    of their bargain.  Their vehicles have also suffered a diminution in value.

22        811.    Volkswagen's conduct proximately caused the injuries to Plaintiff and the

23    Washington Subclass members.

24        812.    Volkswagen is liable to Plaintiff and the Washington Subclass members for damages

25    in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

26        813.    Pursuant to Wash. Rev. Code § 19.86.095, Plaintiff will serve the Washington

27    Attorney General with a copy of this Complaint as Plaintiff and the Washington Subclass members

28    seek injunctive relief.

# COUNT II

## BREACH OF CONTRACT

### (Based On Washington Law)

814.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

815.    Plaintiff brings this Count on behalf of the Washington Subclass.

816.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Washington Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Washington Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Washington Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

817.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Washington Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

818.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Washington Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

## FRAUD BY CONCEALMENT

819.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

820.     This claim is brought on behalf of the Washington Subclass.

821.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

822.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

823.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

1    intentional manipulation of the system.  That's just a whole other level of not only lying to the

2    government, but also lying to your consumer.  People buy diesel cars from Volkswagen because

3    they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the

4    sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases

5    into the environment."

6        824.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal

7    the details of its scheme to regulators or consumers, including Plaintiffs and Class members.

8    Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers

9    and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a

10   reputable manufacturer that complies with applicable law, including federal and state clean air law

11   and emissions regulations, and that its vehicles likewise comply with applicable law and

12   regulations.  Volkswagen's false representations were material to consumers, both because they

13   concerned the quality of the affected vehicles, including their compliance with applicable federal

14   and state law and regulations regarding clean air and emissions, and also because the representations

15   played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers,

16   including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

17   leasing were *clean* diesel cars, and they paid accordingly.

18       825.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect

19   to the vehicles at issue because knowledge of the scheme and its details were known and/or

20   accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to

21   implementation and maintenance of its scheme, and because Volkswagen knew the facts were not

22   known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty

23   to disclose because it made general affirmative representations about the qualities of its vehicles

24   with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars

25   with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure

26   of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

27   vehicles, its actual philosophy with respect to compliance with federal and state clean air law and

28   emissions regulations, and its actual practices with respect to the vehicles at issue.  Having

CLASS ACTION COMPLAINT                    - 168 -
000700-00  809975 V1

volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

826.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

827.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

828.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

829.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of

thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

830.    The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

831.    Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

832.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**W.     Claims Brought on Behalf of the Wisconsin Subclass**

**COUNT I**

**VIOLATIONS OF THE WISCONSIN
DECEPTIVE TRADE PRACTICES ACT**

**(WIS. STAT. § 110.18)**

833.    Plaintiff Alfred Howe ("Plaintiff," for purposes of all Wisconsin Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

834.    This claim is brought only on behalf of the Wisconsin Subclass.

CLASS ACTION COMPLAINT
000700-00  809975 V1

- 170 -

835.   Volkswagen is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

836.   Plaintiff and Wisconsin Subclass Members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).  Plaintiff and Wisconsin Subclass Members purchased or leased one or more Affected Vehicles.

837.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT. § 100.18(1).  By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in unfair and deceptive acts and practices and violated the Wisconsin DTPA.

838.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

839.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

840.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

841.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Wisconsin DTPA.

842.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above.  Volkswagen compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

843.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

844.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Wisconsin Subclass.

845.   Volkswagen knew or should have known that its conduct violated the Wisconsin DTPA.

846.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands that were either false or misleading.

847.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a.   Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b.   Intentionally concealed the foregoing from Plaintiffs; and/or

    c.   Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

848.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

849.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Wisconsin Subclass.  A vehicle made by a reputable manufacturer of environmentally clean vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

850.    Plaintiff and the Wisconsin Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

851.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Wisconsin DTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

852.    Volkswagen' violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

853.    As a direct and proximate result of Volkswagen's violations of the Wisconsin DTPA, Plaintiff and the Wisconsin Subclass have suffered injury-in-fact and/or actual damage.

854.    Plaintiff and the Wisconsin Subclass are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2).  Because Volkswagen's conduct was committed knowingly and/or intentionally, Plaintiff and the Wisconsin Subclass are entitled to treble damages.

855.    Plaintiff and the Wisconsin Subclass also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

## COUNT II
## FRAUD BY CONCEALMENT

856.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

857.    This claim is brought on behalf of the Wisonsin Subclass.

858.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

859.    Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

860.    Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and

Class members placed in its representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

861.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.  Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

862.   Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its

vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

863.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

864.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emission qualities of its referenced vehicles and its emissions scheme.

865.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class Members' actions were justified.  Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

866.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result

1    of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and

2    Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of

3    thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by

4    Volkswagen's corporate policies.  Had Plaintiffs and Class members been aware of Volkswagen's

5    emissions schemes with regard to the vehicles at issue, and the company's callous disregard for

6    compliance with applicable federal and state law and regulations, Plaintiffs and Class members who

7    purchased or leased new or certified previously owned vehicles would have paid less for their

8    vehicles or would not have purchased or leased them at all.

9           867.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of

10   Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the

11   Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made

12   any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what

13   otherwise would have been fair market value for the vehicles.

14          868.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an

15   amount to be proven at trial.

16          869.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with

17   intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the

18   representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent

19   permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages

20   in an amount sufficient to deter such conduct in the future, which amount is to be determined

21   according to proof.

22                              **COUNT III**
                          **BREACH OF CONTRACT**
23                      **(BASED ON WISCONSIN LAW)**

24          870.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

25   herein.

26          871.   Plaintiff brings this Count on behalf of the Wisconsin Subclass.

27

28

872.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Wisconsin Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Wisconsin Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Wisconsin Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

873.   Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Wisconsin Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

874.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Wisconsin Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.     Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

1   B.  An order temporarily and permanently enjoining Volkswagen from continuing the

2 unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

3   C.  Injunctive relief in the form of a recall or free replacement program;

4   D.  Costs, restitution, damages, including punitive damages, and disgorgement in an

5 amount to be determined at trial;

6   E.  An order requiring Volkswagen to pay both pre- and post-judgment interest on any

7 amounts awarded;

8   F.  An award of costs and attorneys' fees; and

9   G.  Such other or further relief as may be appropriate.

10           **DEMAND FOR JURY TRIAL**

11

12    Plaintiffs hereby demand a jury trial for all claims so triable.

13 DATED:  September 21, 2015    HAGENS BERMAN SOBOL SHAPIRO LLP

14

15          By _____*/s/ Thomas E. Loeser*_____

             THOMAS E. LOESER

16         Steve W. Berman (*pro hac vice to be filed*)

         Thomas E. Loeser (202724)

17         HAGENS BERMAN SOBOL SHAPIRO LLP

         1918 8th Avenue, Suite 3300

18         Seattle, Washington  98101

         Tel: (206) 623-7292

19         Fax: (206) 623-0594

20         steve@hbsslaw.com

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Peter B. Fredman
LAW OFFICE OF PETER FREDMAN
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile:  (510) 868-2627
peter@peterfredmanlaw.com

Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California  94710
Tel: (510) 725-3000
Fax: (510) 725-3001
jefff@hbsslaw.com

*Attorneys for Plaintiffs and the proposed classes*